The STATE of Ohio, Appellee,

v.

PUMPELLY, Appellant.

[Cite as *State v. Pumpelly* (1991), 77 Ohio App.3d 470.]

Court of Appeals of Ohio,
Clermont County.

No. CA90–12–110.

Decided Sept. 30, 1991.

.

472

*Donald W. White,* Prosecuting Attorney, and *David H. Hoffmann,* for appellee.

*Charles J. Tekulve,* for appellant.

JONES, Presiding Judge.

Defendant-appellant, Maria Pumpelly, was indicted by the Clermont County Grand Jury on January 25, 1990. The indictment charged appellant with three counts involving cocaine. Count One charged appellant with drug abuse in violation of R.C. 2925.11, and Counts Two and Three charged appellant with aggravated trafficking in violation of R.C. 2925.03(A)(5) and (7), respectively. Police arrested appellant by warrant on indictment, and a jury trial was held on September 13, 1990. The jury found appellant guilty as charged. The trial court sentenced appellant to concurrent terms of confinement of one year for Count One, two to fifteen years with a three-year actual term for Count Two, and four to twenty-five years with a five-year actual term for Count Three.

Count One of the indictment, drug abuse, arose out of a search conducted on August 8, 1989. On that day, Clermont County Narcotics Agent Michael McMillan executed a search warrant at appellant's apartment in Clermont County. There he discovered several broken glass pipes containing a burnt substance on the ends, a plastic lid containing a white powder, several small straws also containing a white powder residue, a butane torch, and metal

screens. Laboratory analysis showed that the white powder was cocaine. Appellant was not present during the search, but her brother, Walter Pumpelly, was in the apartment.

The aggravated trafficking charges under Counts Two and Three arose from appellant's interactions with Craig Bush, a paid police informant and acquaintance of appellant. Bush himself had a history of drug abuse. However, in the summer of 1989, Bush contacted the Narcotics Unit and told them that he wanted to change his life. He provided the unit with a list of names of drug offenders and began to assist in drug offense investigations. The unit educated Bush about matters such as how the quantity of a drug involved in a transaction affects its legal significance. Bush was paid for his services as an informant.

Bush first met appellant in November 1988. In August or September 1989, Bush saw her again. At that time, appellant was in Lexington, Kentucky, in a drug rehabilitation center trying to overcome her addiction to cocaine. Appellant's former boyfriend paid Bush $50 to drive to Kentucky, pick appellant up, and bring her back to Ohio.

Appellant's aggravated trafficking charge under Count Two stemmed from events which occurred on December 5 and 6, 1989. On December 5, Bush visited appellant at her apartment in Clermont County. While he was there, he asked her whether she could get him a half ounce of cocaine, to which she replied that she could. Bush returned the following day, December 6, to get the drugs. He brought money supplied by the Clermont County Narcotics Unit and was wearing a microphone and radio transmitter. Appellant made several phone calls from Clermont County. Because appellant was unable to reach her source, Bush drove appellant to Dayton to purchase the cocaine. Ultimately, appellant contacted a supplier from a phone at a gas station in Dayton. Some time after that, an individual arrived at the gas station, Bush gave appellant the money, and appellant left with the individual. Appellant returned later with cocaine which she gave to Bush. Bush then drove appellant back to Clermont County and turned the drugs over to the Narcotics Unit, receiving $300 for his efforts.

Count Three, also an aggravated trafficking charge, resulted from a similar incident. On January 6, 1990, Bush again visited appellant at her Clermont County apartment. This time he brought along undercover Narcotics Unit Agent Greg Clark. While still in Clermont County, appellant agreed to purchase an ounce and a half of cocaine in Dayton for Clark. Clark drove Bush and appellant to Dayton. After a supplier was contacted by phone, appellant was given money and left with an individual, returning later with cocaine. The three then returned to Clermont County, and Bush was paid $500.

Appellant appeals her convictions, raising six assignments of error for our review. For purposes of clarity, we will not address these arguments in the order in which appellant has presented them. Instead, we will first discuss the issues regarding Count One, drug abuse, raised in Assignments of Error Nos. 2 and 3. Then, we will consider Counts Two and Three, aggravated trafficking, which are the focus of Assignments of Error Nos. 1 and 4. We will then address Assignments of Error Nos. 5 and 6, which concern the trial as a whole.

## I. Count One—Drug Abuse

### Assignment of Error No. 3

"The admission of hearsay evidence showing appellant occupied the premises and overdosed on cocaine constituted plain error depriving appellant of due process."

In her third assignment of error, appellant argues that the trial court erroneously admitted hearsay evidence presented by the state. Agent McMillan, a witness for the state, stated at trial that appellant was not at her apartment during the execution of the search warrant but that her brother Walter was there. McMillan then testified as to statements made by Walter, who did not testify at trial. According to McMillan, Walter said that appellant lived in the apartment, that she was a cocaine addict, and that she was absent at that time because she was suffering from a cocaine overdose. Additionally, McMillan testified that another officer told him that "personnel" advised the officer that appellant had overdosed on cocaine on August 8, 1989. McMillan's testimony regarding the statements of Walter and of the officer constitute inadmissible hearsay. See Evid.R. 801. The trial court erred in admitting this evidence.

Having determined that the hearsay was erroneously admitted, we must now evaluate whether the error was harmless or prejudicial. *State v. Woods* (1988), 48 Ohio App.3d 1, 548 N.E.2d 954; *State v. Davis* (1975), 44 Ohio App.2d 335, 73 O.O.2d 395, 338 N.E.2d 793. "In so determining, the court must review the entire record, disregarding the objectionable material, and determine whether there was otherwise overwhelming evidence of the appellant's guilt." *Woods, supra,* 48 Ohio App.3d at 5–6, 548 N.E.2d at 959; *Davis, supra; Harrington v. California* (1969), 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284. If the record does not contain overwhelming evidence of guilt other than the objectionable material, then the judgment of the trial court must be reversed. *Woods* and *Davis, supra.*

Appellant was charged with drug abuse in violation of R.C. 2925.11 which provides, "[n]o person shall knowingly obtain, possess, or use a controlled

substance." Since no admissible evidence was presented to show that appellant obtained or used cocaine on August 8, 1989, the state had to demonstrate appellant's possession of the cocaine. Agent McMillan's testimony was the sole source of evidence of possession. In addition to the previously discussed hearsay, McMillan testified that he saw rent receipts in appellant's name in the room in which the cocaine was discovered. No evidence placed appellant in the apartment at or near the time the cocaine was found. Other than the improperly admitted hearsay, the testimony about the rent receipts is the only evidence in the record which bears on the element of possession. Disregarding the objectionable hearsay, we cannot find that rent receipts alone provide evidence sufficient to prove beyond a reasonable doubt that appellant is guilty of the offense of drug abuse. Consequently, we must reverse the drug abuse conviction. *Woods* and *Davis, supra.*

We note that appellant's counsel failed to object to the admission of the hearsay at trial. The failure to object to a claimed error in a criminal proceeding will preclude an appellate court from taking notice of it on appeal unless it rises to the level of plain error under Crim.R. 52(B). *State v. Underwood* (1983), 3 Ohio St.3d 12, 3 OBR 360, 444 N.E.2d 1332; *State v. Campbell* (Sept. 12, 1988), Butler App. Nos. CA87–07–089 and 87–09–116, unreported, 1988 WL 94042. Under Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." As this court has previously stated that "[t]o rise to the level of plain error, it must appear on the face of the record not only that the error was committed, but that except for the error, the result of the trial clearly would have been otherwise and that not to consider the error would result in a clear miscarriage of justice." *State v. Bock* (1984), 16 Ohio App.3d 146, 150, 16 OBR 154, 158, 474 N.E.2d 1228, 1233. Thus, this court will take notice of plain error only with the utmost caution and under exceptional circumstances. See *State v. Adams* (1980), 62 Ohio St.2d 151, 16 O.O.3d 169, 404 N.E.2d 144; *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804.

After a careful review of the record, we believe that appellant would not have been found guilty of drug abuse had the hearsay been excluded. Allowing a conviction based on improperly admitted evidence to stand merely because counsel failed to object would result in a clear miscarriage of justice. Therefore, the admission of the hearsay in this case rises to the level of plain error of which we may take notice, and we sustain appellant's third assignment of error.

### Assignment of Error No. 2

"The trial court erred in denying defendant-appellant's motion for judgment of acquittal pursuant to Rule 29 where the state failed to prove defendant-

appellant committed the offense of drug abuse and her conviction was against the manifest weight of the evidence."

In her second assignment of error, appellant argues that the trial court should have granted her Crim.R. 29 motion for acquittal on Count One, drug abuse. Under Crim.R. 29(A), "[t]he court on motion of a defendant * * * shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." Thus, a court should grant a motion for acquittal if the evidence is such that reasonable minds could not find that each material element of a crime has been proven beyond a reasonable doubt. See *State v. Bridgeman* (1978), 55 Ohio St.2d 261, 9 O.O.3d 401, 381 N.E.2d 184.

As we discussed, the state had the burden to prove that appellant possessed cocaine on August 8, 1989, in order to establish the offense of drug abuse. " 'Possess' or 'possession' means having control over a thing or substance but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(L). Furthermore, "[t]he mere fact that one is the owner or lessee of premises upon which narcotics are found—where such premises are also regularly occupied by others as co-tenants and the narcotics are found in an area ordinarily accessible to all tenants—is not, without further evidence, sufficient to establish *possession* in the owner or lessee." (Emphasis *sic.*) *State v. Haynes* (1971), 25 Ohio St.2d 264, 270, 54 O.O.2d 379, 382, 267 N.E.2d 787, 791; see, also, *State v. Stivers* (Mar. 19, 1990), Butler App. No. CA89–05–079, unreported, 1990 WL 28687.

The rent receipt evidence demonstrated only that appellant rented the premises where the cocaine was found; it did not prove that appellant possessed the cocaine. Because appellant did not have exclusive access to the apartment, the rent receipt evidence, without more, was insufficient to establish the element of possession. Therefore, reasonable minds could not have found that the state proved each element of drug abuse beyond a reasonable doubt, and the trial court should have ordered the entry of a judgment of acquittal on Count One of the indictment. Appellant's second assignment of error is therefore also well taken.

## II. Counts Two and Three—Aggravated Trafficking

### Assignment of Error No. 1

"The trial court erred to the prejudice of appellant by overruling appellant's motion for acquittal as to counts two and three made after the state's opening statement."

■ Appellant's first assignment of error contends that the trial court erred in overruling her Crim.R. 29 motion made after the state's opening statement for a judgment of acquittal as to Counts Two and Three, aggravated trafficking. A motion for judgment of acquittal may properly be made at the close of the state's opening statement. *State v. Scott* (1983), 8 Ohio App.3d 1, 8 OBR 1, 455 N.E.2d 1363. A trial court should overrule such a motion if the state's opening statement indicates that the accused was charged with the offense at issue and the prosecutor makes no admission of fact which shows that no offense was committed or that the accused is not guilty. *State v. Karcher* (1951), 155 Ohio St. 253, 44 O.O. 258, 98 N.E.2d 308; *Scott, supra.*

■ Appellant argues that the prosecutor failed to allege that appellant sold or offered to sell cocaine in Clermont County, the offense for which she was tried. See R.C. 2925.03(A)(5) and (7). After studying the state's opening statement, we find this argument lacks merit. The prosecutor made the following statements in his opening with respect to Counts Two and Three of the indictment:

"[I]n December, Craig Bush goes to Maria's apartment. Craig Bush and his wife says to the defendant, 'I know somebody who will buy cocaine.' And Maria says, 'Let's go get it.'

" * * *

"Then in January, * * * he goes over to Maria's apartment again. This time with Agent Clark. * * * Mr. Bush goes into the apartment * * * and comes out with Maria and introduces the defendant to Agent Clark * * * and Maria agrees to take him to Dayton and agrees to obtain the cocaine for Agent Clark this time."

These statements indicate that appellant made offers in Clermont County to sell cocaine, the offenses for which she was charged and tried. Furthermore, we find no admissions in the opening statement showing that the offense was not committed or that appellant was not guilty. Therefore, the trial court correctly denied appellant's motion for acquittal on Counts two and three because the opening contained sufficient factual statements to support further proceedings. Accordingly, we overrule appellant's first assignment of error.

### Assignment of Error No. 4

"A conviction cannot be sustained where the state fails to prove beyond a reasonable doubt that the offense occurred in the county in which the defendant is tried."

In her fourth assignment of error, appellant argues that venue was not properly established and that consequently, we should reverse her conviction under Counts Two and Three, aggravated trafficking. Appellant contends that the alleged offenses occurred in Montgomery County and, therefore, venue does not lie in Clermont County.

Under Crim.R. 18(A), the venue of a criminal case is determined by statute. The applicable venue statute states: "[t]he trial of a criminal case in this state shall be held in a court having jurisdiction of the subject matter, and in the territory of which the offense or any element of the offense was committed." R.C. 2901.12(A). Appellant was charged with aggravated trafficking under R.C. 2925.03(A)(5) and (7), which provide:

"(A) No person shall knowingly do any of the following:
" * * *

"(5) Sell or offer to sell a controlled substance in an amount equal to or exceeding the bulk amount but in an amount less than three times that amount;
" * * *

"(7) Sell or offer to sell a controlled substance in an amount equal to or exceeding three times the bulk amount."

Appellant claims that because she did not sell or offer to sell cocaine in Clermont County, the evidence did not show that the offense or any element of the offense was committed there.

The Ohio Supreme Court has described an "offer" to sell narcotics under R.C. 2925.03(A)(5) and (7) as a declaration of one's readiness or willingness to sell. *State v. Patterson* (1982), 69 Ohio St.2d 445, 23 O.O.3d 394, 432 N.E.2d 802; *State v. Scott* (1982), 69 Ohio St.2d 439, 23 O.O.3d 390, 432 N.E.2d 798. Adopting this interpretation of an offer, this court previously stated that "[o]ne need only knowingly *declare, display,* or *exhibit* that one is ready or willing to sell a controlled substance" to be convicted under R.C. 2925.03(A)(5) or (7). (Emphasis *sic.*) *State v. Sandlin* (Sept. 30, 1988), Warren App. No. CA87–12–107, at 4, unreported, 1988 WL 102583; see, also, *State v. Block* (June 25, 1984), Warren App. No. CA83–08–058, unreported, 1984 WL 3357. Moreover, a person who offers to provide narcotics as a link in the chain of supply makes an "offer" within the meaning of R.C. 2925.03(5) or (7), whether that person intends to act as an agent of the purchaser or of the seller. *State v. Latina* (1984), 13 Ohio App.3d 182, 13 OBR 229, 468 N.E.2d 1139.

"So long as appellant knowingly manifested a readiness and willingness to sell, * * * and the totality of the circumstances indicate [*sic* ] that the offer was not made in jest or in a manner as not to be taken seriously by others[,]

* * * then appellant can be convicted of aggravated trafficking for offering to sell a controlled substance." *Sandlin, supra,* at 6–7.

The record contains evidence sufficient to convince a reasonable trier of fact beyond a reasonable doubt that appellant knowingly offered to sell cocaine in Clermont County in violation of R.C. 2925.03(A)(5) and (7). Since the offers occurred in Clermont County, venue was properly established under R.C. 2901.12(A). Therefore, the law dictates that we overrule appellant's fourth assignment of error and uphold the aggravated trafficking convictions.

While we must follow the mandate of the law and affirm these convictions, we do so with great reluctance in this instance. The actions of the state and especially of its informant, Bush, in exploiting appellant to secure a trafficking conviction strike us as deplorable conduct. Our reading of the record suggests that but for Bush's insistence and instigation, no sale or offer to sell narcotics would have occurred. Knowing appellant's addiction to cocaine and eager to receive payment for work as a police informant, Bush set appellant up, seeking her out and encouraging her to break the law by obtaining cocaine. Bush, with the help of the state, supplied appellant with the incentive, the money, and the transportation, all for his own financial gain. In essence, the state compensated Bush to take advantage of appellant's weakness and invite her to violate the law. Despite our overwhelming distaste for the law enforcement tactics employed here, we are bound by the law; therefore, we reluctantly affirm appellant's convictions under Counts Two and Three.

### III. Appellant's Remaining Arguments

### Assignment of Error No. 5

"The defendant-appellant was denied effective assistance of counsel in violation of the Sixth Amendment to the United States Constitution."

Appellant's fifth assignment of error alleges that appellant was denied effective assistance of counsel. Specifically, appellant points to seven omissions by her counsel and argues that she was prejudiced by their cumulative effect. We find that this assignment of error is not well taken.

As stated by the Ohio Supreme Court:

"Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. (*State v. Lytle* [1976], 48 Ohio St.2d 391, 2 O.O.3d 495, 358 N.E.2d 623; *Strickland v. Washington* [1984], 466 U.S. 668 [104 S.Ct. 2052, 80 L.Ed.2d 674], followed.)" *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph two of the syllabus.

In evaluating a claim of ineffective assistance of counsel, a court must consider the totality of the evidence, "[t]aking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings," and determine whether the defendant has shown that the result of the trial was reasonably likely to have been different without the alleged errors. *Strickland v. Washington* (1984), 466 U.S. 668, 696, 104 S.Ct. 2052, 2069, 80 L.Ed.2d 674, 699. "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Id.* at 697, 104 S.Ct. at 2069, 80 L.Ed.2d at 699.

Applying these standards to the case before us, we find that appellant has not demonstrated that prejudice resulted from the alleged errors by her counsel. Our consideration of the totality of the evidence does not indicate that the outcome of the trial was reasonably likely to have been different absent the errors claimed by appellant. Accordingly, appellant's fifth assignment of error is overruled.

### Assignment of Error No. 6

"The defendant-appellant was deprived of a fair trial due to the misconduct of the prosecuting attorney."

In her sixth and final assignment of error, appellant argues that misconduct of the prosecutor deprived her of a fair trial. We find no merit to this contention. "The test for prosecutorial misconduct is whether remarks are improper and, if so, whether they prejudicially affected substantial rights of the accused." *State v. Lott* (1990), 51 Ohio St.3d 160, 165, 555 N.E.2d 293, 300; *State v. Smith* (1984), 14 Ohio St.3d 13, 14 OBR 317, 470 N.E.2d 883. A prosecutor must avoid insinuations and assertions which are calculated to mislead and may not express a personal belief or opinion as to the credibility of a witness or the guilt of an accused. *Id.* Also, a prosecutor may not allude to matters not supported by admissible evidence. *Id.*

Appellant claims that two questions asked by the prosecutor during trial were improper and deprived her of a fair trial. First, the prosecutor questioned a witness for the state about the legal significance of an amount of cocaine in excess of the bulk amount. The witness testified that a defendant receives a mandatory sentence when such an amount is involved in the offense. Appellant had previously questioned that witness about the legal significance and did not object to the prosecutor's question. Later, the prosecutor asked another state's witness whether, in his experience, it was "unusual for a user to graduate to a dealer." Appellant objected, and the court sustained the objection without instructing the jury to disregard the

question. We do not believe that these questions prejudiced any substantial rights of appellant.

Appellant also argues that several remarks made by the prosecutor in his closing argument, when viewed in their totality, denied her a fair trial. A prosecutor is normally entitled to a certain degree of latitude in closing argument. *Lott* and *Smith, supra.* After examining the prosecutor's closing argument, we find that the statements to which appellant objects, when taken as a whole and read in context, fall properly within the limits of acceptable advocacy generally afforded in closing argument.

Appellant alleges that the prosecutor stated his personal belief that appellant had overdosed on cocaine in Clermont County and that she had been smoking crack on a certain date. A close examination of the closing argument reveals that the prosecutor was not improperly expressing opinions or personal beliefs. Instead, he was only stating his belief as to what was in the record. Specifically, the prosecutor stated, "she had OD'd, I believe was his testimony, * * * [a]nd I believe the Officer testified that it was in Clermont County. * * * And remember what he [Craig Bush] said on redirect? He went in there and she was smoking * * * smoking crack." In making these statements, the prosecutor was simply restating for the jury the evidence presented, a proper technique which cannot be said to have prejudiced appellant.

Appellant next objects to the prosecutor's references to her as a "rat" and "poor Maria." Appellant argues that these statements were improper and calculated to inflame the jury, but this argument lacks persuasiveness when the statements are read in context. In discussing the use of undercover agents and informants in drug enforcement, the prosecutor stated, "[l]adies and gentlemen, you need a rat to get a rat. You don't go into a cocaine ring without having someone that can get into that ring." Earlier, while speaking about appellant's addiction, the prosecutor said, "[p]oor Maria. Who put her in that situation? Who addicted her to that cocaine?" In light of the context in which these statements were made, we do not believe that they were manifestly improper or that they materially prejudiced appellant.

Appellant contends that another remark shifted the burden of proof and infringed upon her Fifth Amendment right against self-incrimination. Referring to the people from whom appellant purchased the cocaine, the prosecutor argued that "because those people in other locations get away with something, does that make it proper for Maria Pumpelly to be found not guilty in this case? Is the evidence such that Maria Pumpelly is innocent? That's the basic question." Appellant alleges prejudicial misconduct with

regard to only the last two sentences quoted above. We do not believe that those sentences, when read in the context of the preceding statement, prejudicially affected any substantial rights of appellant.

 Finally, appellant claims that the following statement improperly called for the jury to convict to meet public demand: "I think you've all heard the phrase over the past few years, 'just say no.' " This statement constituted the prosecutor's response to appellant's arguments, in which, according to the prosecutor, "Maria Pumpelly is being made out to be a pitiful victim caught up, used by these other people." We do not find this line of argument, namely, stressing an individual's responsibility for her own actions, to be improper. Also, we do not believe that this statement resulted in prejudice to appellant.

After reviewing the record, noting especially the allegedly improper questions and the prosecutor's closing argument, we do not find the prosecutor's conduct to be particularly egregious. We also do not believe that appellant was prejudiced by the claimed misconduct. Therefore, we overrule appellant's sixth assignment of error.

To summarize, we reverse appellant's drug abuse conviction, and we affirm the convictions for aggravated trafficking with great reluctance, for the reasons previously stated. Assignments of error two and three are sustained, and the four other assignments are overruled.

*Judgment affirmed in part*
*and reversed in part.*

KOEHLER, J., concurs.

WALSH, J., concurs separately.

WALSH, Judge, concurring separately.

I concur in the judgment herein. However, it is without reluctance that I vote to affirm appellant's convictions under counts two and three, as I do not share the majority's view of the law enforcement tactics involved in this case as being deplorable and distasteful. There are no fortunate or tasteful tactics to be used to develop a case against drug dealers of which I am aware.