OPINION
On May 19, 1998, Defendant-Appellant Daniel E. Weber ("Weber") was indicted on four counts of possession of cocaine and three counts of possession of marijuana, all with gun specifications, one count of unlawful possession of a dangerous ordnance, and ten counts of having a weapon while under disability. During his jury trial in April, 1999, two of the cocaine possession counts and one of the weapons under disability counts were dismissed. He was subsequently found guilty of all remaining counts. As a result, Weber was sentenced to a total of thirteen years.
Weber now appeals his conviction raising the following assignments of error:
 The ineffective assistance of Appellant's trial counsel violated Appellant's rights pursuant to the Sixth and Fourteenth Amendments to the United States Constitution and the Due Process Clause of the United States. Appellant was denied his right to a fair trial and due process as guaranteed by the United States Constitution as a result of prosecutorial misconduct. Appellant's constitutional right to a fair trial was violated due to the court's failure to warn the prosecutor regarding his misconduct or to issue a cautionary instruction to the jury. Appellant's constitutional rights to a fair trial and to due process were violated when he was convicted on evidence insufficient to sustain the verdict.
 Errors occurring throughout these proceedings constitute cumulative error such that the convictions must be reversed.
The State presented the following evidence at trial. For two to three months prior to the search of Weber's residence at 2129 Ward Hill Avenue, the police had been performing surveillance on this property, based on an informant's tip of suspected drug activity. During this surveillance, the police performed trash pulls at the residence and discovered cocaine and marijuana residue. On February 6, 1998, the police stopped Weber when he entered Montgomery County on his way back from Florida and arrested him. Later that day, two officers arrived at the Ward Hill residence to secure the property until a search warrant could be obtained.
When the officers arrived, an individual named Tamara Kessel was the only person present at the residence. She advised the officers she was a friend of lessee, Shannon Yost, and was there to care for her plants. The police then did a protective sweep of the residence and remained in the living room until officers arrived with the search warrant several hours later.
While the officers were awaiting the search warrant, Jason Yost, Shannon's brother, arrived at the residence and questioned the police about their presence there. The officers asked for Jason's I.D, which when examined, revealed that the Ward Hill residence was not his address. Jason left, only to return shortly thereafter, again questioning the officers about their presence at the residence. An argument ensued, wherein Jason told the officers to leave since they did not have a search warrant. In response, the officers advised Jason to either take a seat in the living room or leave the residence. Soon after, Jason left the residence.
Some time in the evening of February 6th, several police officers arrived with a search warrant and proceeded to thoroughly search the premises. There were several firearms found in the home, including one in the kitchen, one in the bathroom, one in each of the spare bedrooms and six in the master bedroom. Additionally, the officers found baggies of marijuana and cocaine, along with drug-related items such as scales, baggies, large amounts of cash, and Inositol, often used as a cocaine cutting agent, throughout the house. The State presented no testimony that Weber's fingerprints were found on any contraband seized from the residence.
The defense presented uncontroverted testimony that Weber left the residence on February 1, 1998 following a fight with his girlfriend and roommate, Shannon Yost. According to defense witnesses, that was the last time he was in the residence prior to the search on February 6, 1998. Additionally, there was testimony that Shannon's brother, Jason, had been staying at the residence for four weeks because of a fight he had with his wife. Both Shannon and Jason testified that five of the guns found at the residence were purchased by Jason at Bill Goodman's Gun and Knife Show on February 2, 1998, the day after Weber left. Further, Shannon testified that she was holding three of the guns for a friend, and another she had taken as collateral in a drug deal. Finally, the tenth gun had been in the residence for some time, but Shannon believed that it was disabled. She testified that Weber was not aware that gun was in the residence.
As to the marijuana and cocaine, Shannon testified that she purchased all of it after Weber left the residence. She claimed that Weber did not approve of her use of cocaine, so she would only do it while he was not around. Shannon was also arrested following this search and had plead guilty to one count of possession of marijuana, one count of possession of cocaine, and one count of possession of a dangerous ordnance. She was serving her sentence at the time of Weber's trial.
Since we find Weber's fourth assignment of error dispositive of the appeal, we will address it first.
When an appellant alleges a sufficiency of the evidence error, the court must determine whether the evidence is "legally sufficient as a matter of law to support the jury verdict." Statev. Clemons (1998), 82 Ohio St.3d 438, 444 (citations omitted). An appellate court's standard when presented with this question "is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v. Jenks
(1991), 61 Ohio St.3d 259, paragraph two of the syllabus. More specifically, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id.
In the present case, the State was required to prove on the weapons counts that Weber knowingly had or acquired the firearms or dangerous ordnances. See R.C. 2923.13(A); R.C. 2923.17(A). Additionally, on the drug counts, the State was required to prove Weber knowingly obtained, possessed or used the controlled substances. R.C. 2925.11(A). "Knowingly" is defined by R.C.2901.22(B) as follows: "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
Further, "possession" is defined as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C.2925.01(K). Possession may be actual or constructive. State v.Butler (1989), 42 Ohio St.3d 174, 175. Constructive possession is shown when an individual can exercise dominion or control over the object, whether or not it is in his immediate physical possession.State v. Wolery (1976), 46 Ohio St.2d 316, certiorari denied (1976), 429 U.S. 932. Weber contends that the State did not present sufficient evidence to prove either knowledge or possession, presumably for any of the charges against him.
As early as 1967, the Tenth District discussed a defendant's knowledge and possession in a similar fact context to the present case. State v. Peters (1967), 12 Ohio App.2d 83. In Peters, the defendant was not present during the search of his apartment where marijuana was found, but was nonetheless found guilty of possession and permitting the use of a dwelling house he owned or controlled for the keeping of narcotics. In reversing his conviction, the court stated the following:
 [E]vidence showed that `it was his apartment, he had lived there eight or nine months and paid $69 a month rent.' Assuming that this is sufficient to establish that appellant `controlled' apartment No. 5, the mere fact of such control is not sufficient to show that he `knowingly' permitted the keeping of marijuana. To permit an inference of guilty knowledge, the state had to produce some evidence of a relationship between the marijuana and appellant.
 He was not in exclusive control of the apartment. He was not present when the drug was found. There is nothing to suggest when the marijuana was delivered. In essence, the state's case is simply that one William Moore was discovered in appellant's apartment; that Moore had marijuana on him, and it was found at various open places around the apartment; that appellant was not present and was not known to have been present at any other time when marijuana was known to be present.
Id. at 86-87.
Thereafter, the Supreme Court also held that owning or leasing a property where contraband is found is insufficient by itself to establish possession, particularly when there are other co-tenants. State v. Haynes (1971), 25 Ohio St.2d 264, 270. InHaynes, the defendant, his girlfriend and three other people all rented the premises where the contraband was found. Additionally, there was uncontroverted testimony that Haynes had left the premises a week before the search following a fight with his girlfriend. The Court held that where defendant is not the only owner or lessee of the property and the contraband is found in an area regularly accessible to the other occupants, without other evidence, this is insufficient to establish possession in the defendant. Id. There can be no inference of guilt for any specific tenant, because it would require speculation that the defendant was the tenant who constructively possessed the contraband. Id.
Several cases since Haynes have addressed the issue of possession based on defendant's ownership or occupancy of the premises. The Tenth District revisited the issue in 1983 in Statev. Hartley (June 30, 1983), Franklin App. No. 82AP-906, unreported. In Hartley, the police found narcotics while executing a search warrant in an apartment where the defendant was found lying on the couch, and another individual was sitting at the dining room table. The police obtained the search warrant following a drug buy at the residence by a police informant. During the search, the police found a gas bill for that address with Peters' name on it and food stamps with the other individual's name on them. The drugs were found on a shelf in the dining room and in a jacket pocket in the bedroom. There was no testimony by the police informant as to who he purchased the drugs from, nor was there testimony as to the ownership of the jacket where some drugs were found. Based on this evidence, even with the defendant present at the time of the search, the court found that inference upon inference would need to be drawn in order to find Peters had possession of the drugs found in the apartment.Id. at p. 2. Therefore, the court found the evidence insufficient to support a conviction for possession. Id.
In State v. Pumpelly, rent receipts containing appellant's name were the only evidence linking her to the drugs found in the apartment. (1991), 77 Ohio App.3d 470, 476. Apparently, Pumpelly shared the apartment with at least one other person and Pumpelly herself was not present at the time the apartment was searched. The Twelfth District held that the rent receipt establishing occupancy of the residence was not sufficient to prove possession of the cocaine. Id. at 477.
In a more recent case, the Tenth District again held that when the defendant does not have sole access to the premises where contraband is found, his occupancy as owner or lessee of the residence is not sufficient in itself to prove possession. Statev. Dawson (Aug. 13, 1998), Franklin App. No. 97APA10-1300, unreported. Again, in Dawson, the defendant shared the residence with another individual who was present at the time of the search, though Dawson was not. Id. The State could only link Dawson to the residence through a mortgage statement and utility bill, but had no evidence proving his knowledge or constructive possession of the marijuana. The court found this insufficient as a matter of law to prove possession of the marijuana. Id. at p. 13.
Two cases out of the Eighth District did find constructive possession of the drugs when the defendant and others occupied the premises and the drugs were found in areas accessible to defendant and the other occupants. State v. Boyd (1989), 63 Ohio App.3d 790; State v. Scalf (Mar. 5, 1998), Cuyahoga App. No. 71910, unreported. In Boyd, during a search of the residence the defendant shared with his girlfriend, drugs and drug-use items were found in plain view throughout the apartment. Id. at 796. However, Boyd was actually present in the residence at the time the search was conducted. Since the drugs and other items were in plain view and readily accessible to Boyd, the court found this was sufficient to establish he had constructive possession of the drugs. Id. See, also, State v. Pruitt (1984), 18 Ohio App.3d 50,58 (holding that readily usable drugs found in close proximity to defendant can establish constructive possession).
Similarly, in State v. Scalf, the defendant shared the residence where drugs were found with several other individuals. Cuyahoga App. No. 71910, at p. 1. In this case, the crack cocaine rocks were found in the kitchen, an area accessible to all residents. Although it is not established in the opinion whether Scalf was present during the search, there was evidence presented that Scalf and his son participated in a controlled drug buy involving crack cocaine just three days prior to the search. Id.
Based on the location of the drugs in the residence, his occupancy, and the controlled drug buy which he participated in, the court found sufficient evidence to prove Scalf had constructive possession of the drugs. Id.
After reviewing all of these cases, we find that the facts of the present case are most similar to the Supreme Court case ofState v. Haynes. In Haynes, as well as Peters, Dawson andPumpelly, the only evidence linking the defendant to the contraband was his occupancy of the residence where it was found. In each of these cases, the defendant was not present at the time of the search, nor was there any forensic evidence presented linking him or her to the contraband. Conversely, in Boyd, the defendant was present during the search where drugs and paraphernalia were found in plain view throughout the residence. And while there is no evidence in Scalf whether the defendant was present during the search, the court considered the additional evidence of his participation in a controlled drug buy involving the same type of drug found in his residence three days later.
Based on the foregoing analysis, it is clear that where the only evidence linking a defendant to the contraband is his ownership or leasing of the property, this is not sufficient to establish constructive possession. In the present case, the only evidence the State presented linking Weber to the firearms and the marijuana and cocaine was his status as lessee of the property. All rooms in the residence were accessible to both tenants since Shannon Yost and Daniel Weber shared the master bedroom. Additionally, the State did not dispute that Weber had been away from the premises for several days at the time of the search. In fact, an officer testified that Weber was returning from Florida when they arrested him. Further, there were no fingerprints or other forensic evidence proving that Weber had ever had any contact with the drugs or guns found at the residence. Considering the evidence in a light most favorable to the State, the evidence was insufficient as a matter of law to prove Weber's knowledge or possession of the firearms or drugs located at 2129 Ward Hill.
Accordingly, Weber's fourth assignment of error is well taken and is hereby sustained. Under App.R. 12(A)(1)(c), we need not address the remaining assignments of error, as they are rendered moot by our finding in this assignment. We reverse the judgment of conviction and hereby order the Appellant discharged.
GRADY, P.J., and FAIN, J., concur.