OPINION
{¶ 1} Defendant-appellant Robert Woodruff appeals from an order of the trial court determining him to have violated the conditions of his probation, and ordering him imprisoned for the remainder of his sentence originally imposed for Attempted Murder, which was a term of from five to twenty-five years. Woodruff contends that the trial court erred by considering evidence of bad acts, with respect to which he had not been given notice, and also that the trial court erred by admitting hearsay evidence from a successor probation officer, who had no direct knowledge of facts set forth in a report from her predecessor. We conclude that the admission of the hearsay evidence cannot possibly have prejudiced Woodruff, since the only probation violations that he was found to have committed were violations that he admitted having committed, when he testified.
 {¶ 2} The trial court bifurcated the hearing. In the portion of the hearing devoted to an adjudication of whether the alleged probation violations had occurred, the trial court excluded the State's attempt to interject evidence of bad acts, with respect to which Woodruff had not been given prior notice. After the trial court found that Woodruff had violated the terms of his probation in some respects, the trial court then proceeded to the disposition phase of the hearing. In this portion of the hearing, evidence of Woodruff's bad acts, which had not been the subject of any of the alleged probation violations, was admitted, without objection. Furthermore, it appears that Woodruff's attorney was familiar with this evidence, because he responded to the evidence in an intelligent manner that suggested prior preparation. Accordingly, we conclude that the admission of this evidence, without objection, did not constitute plain error, and the judgment of the trial court is Affirmed.
 I {¶ 3} In 1994, Woodruff pled guilty to one count of Attempted Murder, and was sentenced to a term of five to twenty-five years imprisonment. In 1999, the trial court sustained Woodruff's motion for shock probation, suspended his sentence, and placed Woodruff on probation, with conditions, for a period not to exceed five years.
 {¶ 4} In April, 2002, Woodruff's probation officer, Jill Johnson, filed a notice alleging that Woodruff had violated the following conditions of his probation:
 {¶ 5} "Rule 1: You shall refrain from violation of any law (Federal, State County, and City). You shall get in touch immediately with your Probation Officer if arrested or questioned by a law-enforcement officer.
 {¶ 6} "Rule 4: You shall work regularly at a lawful occupation and support your legal dependents, if any, to the best of your ability. When out of work, you shall notify your Probation Officer at once. You shall consult your Probation Officer prior to job changes.
 {¶ 7} "Rule 5: You shall report at such time and place as directed by your Probation Officer. If your Probation Officer is unavailable, you shall report to the Officer-of-the-Day, the Team Supervisor, or the Division Manager.
 {¶ 8} "Rule 6: You shall not use unprescribed narcotics or any other illegal chemicals and consent to medical tests to determine if you have violated this condition of probation. You shall be subject to periodic searches without warrant or Court order to determine compliance with this condition of probation."
 {¶ 9} In June, 2002, Terra Bechtol took over Johnson's caseload and became Woodruff's probation officer.
 {¶ 10} On November 21, 2002, a probation revocation hearing was held. At the outset of that hearing, the following colloquy occurred:
 {¶ 11} "MR. GORALESKI [representing Woodruff]: Your Honor, uh . . . if I may be heard, uh . . . as the Court notes, uh . . . the Notice of Revocation was, uh . . . filed on April the 1st
alleging violations of Rule One, Four, Five and Six. Uh . . . I would note that, uh . . . none of those alleged violations, uh . . . have anything to do with, uh . . . Mr. Woodruff's alleged conduct over in the jail while confined. And I would think that a revocation that would have anything to do with allegations of misconduct on Mr. Woodruff's part would be inappropriate since it's not contained in the Notice of Revocation that is at issue here.
 {¶ 12} "JUDGE WAGNER: Okay.
 {¶ 13} "MS. HIETT [representing the State]: Your Honor, the only response the State would have is that I believe in Ms. Bechtol's defense that it was only recently, in fact, this past week that she found out that there were even problems in the jail. And also that was a reason, I believe, that the Court was asking as to why he was on a two-man move and always in shackles.
 {¶ 14} "And so based on what, at least was indicated to me as of last week, I went ahead and have subpoenaed at least the officer or officers, there's actually two that would be testifying, as to the basis for the two-man move.
 {¶ 15} "Also, uh . . . they would be testifying to further, uh . . . conduct by the Defendant which Ms. Bechtol was just made aware of.
 {¶ 16} "JUDGE WAGNER: Okay. Well, I — I'm going to accept Mr. Goraleski's representation here. He's right, it's not part of this. What we'll do is we'll conduct the Hearing on the Probation Revocation and make a determination as to whether that should be granted here.
 {¶ 17} "I would ask though that the officers remain in the event that I have to make a decision on sentencing . . .
 {¶ 18} "MS. HIETT: That's fine.
 {¶ 19} "JUDGE WAGNER: . . . and his conduct in the jail would certainly have a bearing on that. Okay."
 {¶ 20} The probation revocation hearing then proceeded. After hearing evidence from both parties, the trial court found that Woodruff had failed to provide verification of employment, as required by Rule Number 4 of his probation conditions; that Woodruff had failed to report to the probation office, as required, on March 19, 2002, in violation of Rule Number 5 of his probation conditions; and that Woodruff tested positive for marijuana on January 23rd and March 12th, 2002, in violation of Rule Number 6 of his probation conditions. With respect to all other alleged probation violations, the trial court found in favor of Woodruff.
 {¶ 21} The trial court then proceeded to the disposition phase of the hearing. The State called two officers who had apparently conveyed Woodruff from jail to the hearing, and they testified to threats and acts of violence by Woodruff while he was incarcerated. The testimony of these officers was received without objection.
 {¶ 22} Following a hearing, the trial court entered an order finding that Woodruff had violated the terms of his probation, and ordering him imprisoned for the remainder of his five to twenty-five year term of imprisonment. From that order, Woodruff appeals.
 II {¶ 23} Woodruff's First Assignment of Error is as follows:
 {¶ 24} "The trial court failed to provide appellant a fair probation revocation hearing as required by due process."
 {¶ 25} In this assignment of error, Woodruff contends that his due process right to a notice and hearing was violated by the testimony of the two police officers concerning his bad acts while in jail, since he had not received prior notice of those allegations. The trial court sustained Woodruff's objections to this line of testimony in connection with the adjudication portion of the hearing. This testimony was excluded, and when the prosecuting attorney indicated, during the argument following the adjudication portion of the hearing, that it would be necessary to elicit this testimony, in rebuttal to an argument made in Woodruff's behalf, the trial court did not permit it. The trial court did, however, indicate that it would consider this evidence in determining what to do, in the event that it should find that Woodruff had violated the terms of his probation. Woodruff interposed no objection to this announcement. Then, when the dispositional phase of the hearing began, after the trial court found certain probation violations to have occurred, the State elicited the testimony of Montgomery County Sheriff's deputies Rod Brown and Michael Hill, Jr., without any objection by Woodruff. They testified concerning certain threats of violence by Woodruff while he was in the Montgomery County Jail, awaiting the probation revocation hearing. Following the testimony by the officers, Woodruff testified in his own behalf, and his counsel showed the events leading up to the alleged threats of violence, indicating that Woodruff had been under a lot of provocation.
 {¶ 26} Under these circumstances, we conclude that Woodruff waived all but plain error when he failed to object to the testimony of Officers Brown and Hill during the dispositional phase of the probation revocation hearing. From the manner in which Woodruff's counsel conducted his direct examination of his client concerning the events about which Brown and Hill had testified, it appears that Woodruff's counsel was prepared to respond to these allegations. Accordingly, we find no plain error. The test for plain error is whether the outcome of the trial would clearly have been otherwise, except for the error. State v. Stallings,89 Ohio St.3d 280, 285, 2000-Ohio-164, 730 N.E.2d 159. Notice of plain error is to be taken with the utmost of caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice.State v. Pumpelly (1991), 77 Ohio St.3d 470, 475, 602 N.E.2d 714, 717. We see no manifest miscarriage of justice in this case, and we do not conclude that the result of the hearing would clearly have been otherwise, had Woodruff received prior notice of the alleged bad acts in the jail.
 {¶ 27} Woodruff's First Assignment of Error is overruled.
 III {¶ 28} Woodruff's second and third assignments of error are as follows:
 {¶ 29} "The revocation hearing was based exclusively upon hearsay."
 {¶ 30} "Defendant was denied effective assistance of counsel as guaranteed under the Fifth, Sixth and Fourteenth amendments to the U.S. Constitution and Article I, Section 10 of the Ohio constitution as to counsel's failure to object to the total hearsay testimony of the substitute P.O. which was the gravamen of the probation rules, 4, 5, 6, that appellant was found guilty of violating."
 {¶ 31} In these assignments of error, Woodruff is contending that the testimony of the successor probation officer, Terra Bechtol, concerning the records of her predecessor, Jill Johnson, was inadmissible hearsay. This testimony was received without objection, therefore, it can only constitute the basis for reversal on appeal if its admission constituted plain error, or if Woodruff's trial counsel was constitutionally ineffective for having failed to object to it.
 {¶ 32} With respect to some of the alleged probation violations, the trial court found in Woodruff's favor. The trial court only found against Woodruff on the basis that he had failed to verify his employment, that he had failed to report to the probation department on one particular occasion, and that he had tested positive for marijuana on two occasions. When he testified in his defense, Woodruff admitted to each of these facts. Consequently, the admission of Bechtol's testimony concerning Johnson's reports, even if it was inadmissible hearsay,[1]
cannot possibly have prejudiced Woodruff.
 {¶ 33} Woodruff's Second and Third Assignments of Error are overruled.
 IV {¶ 34} All of Woodruff's assignments of error having been overruled, the judgment of the trial court is Affirmed.
Young and Glasser, JJ., concur.
(Judge George M. Glasser, Retired from the Sixth Appellate District, Sitting by Assignment of the Chief Justice of the Supreme Court of Ohio).
[1] The Ohio Rules of Evidence do not apply to proceedings granting or revoking probation. Evid. R. 101(C)(3). While some standard for trustworthiness of evidence may be required by due process, under both the Ohio and United States constitutions, we find it unnecessary to decide whether Bechtol's testimony concerning Johnson's reports meet that standard, since the only violations of Woodruff's probation found by the trial court were the violations Woodruff admitted to, in his testimony.