[Cite as *State v. Owens*, 2018-Ohio-1334.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**ASHTABULA COUNTY, OHIO**


| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2017-A-0056** |
| JENNIFER M. OWENS, | : | |
| Defendant-Appellant. | : | |


Criminal Appeal from the Ashtabula County Court of Common Pleas, Case No. 2016 CR 00410.

Judgment: Affirmed.


*Nicholas A. Iarocci*, Ashtabula County Prosecutor, and *Shelley M. Pratt*, Assistant Prosecutor, Ashtabula County Courthouse, 25 West Jefferson Street, Jefferson, OH 44047 (For Plaintiff-Appellee).

*Patricia J. Smith*, 206 South Meridian Street, Suite A, Ravenna, OH 44266 (For Defendant-Appellant).


DIANE V. GRENDELL, J.

{¶1} Defendant-appellant, Jennifer M. Owens, appeals her convictions for Aggravated Possession of Drugs, Illegal Assembly or Possession of Chemicals for the Manufacture of Drugs, and Possessing Criminal Tools, in the Ashtabula County Court of Common Pleas. The issue to be determined by this court is whether convictions relating to possession of drugs and drug manufacturing tools are supported by the weight and sufficiency of the evidence when methamphetamine and items used for its

manufacture were found in plain view in a house where the defendant was located and admitted she lived. For the following reasons, we affirm the judgment of the court below.

{¶2} On July 6, 2016, the Ashtabula County Grand Jury issued an Indictment, charging Owens with Aggravated Possession of Drugs (Count One), a felony of the first degree, in violation of R.C. 2925.11(A) and (C)(1)(d); Illegal Manufacture of Drugs (Count Two), a felony of the first degree, in violation of R.C. 2925.04(A) and (C)(3)(b); Illegal Assembly or Possession of Chemicals for the Manufacture of Drugs (Count Three), a felony of the second degree, in violation of R.C. 2925.041(A) and (C)(2); Endangering Children (Count Four), a felony of the third degree, in violation of R.C. 2919.22(B)(6) and (E)(3)(a); and Possessing Criminal Tools (Count Five), a felony of the fifth degree, in violation of R.C. 2923.24(A).

{¶3} A jury trial was held on June 12-14, 2017. The following pertinent testimony and evidence were presented:

{¶4} Deputy Brian Sterrick of the Ashtabula County Sheriff's Office, testified that during the course of an investigation on May 15, 2016, he went to 5434 West Maple Avenue in Geneva Township, looking for Owens, as well as her boyfriend, Harold Arkkelin and his brother, Scott Arkkelin. Sterrick spoke with the Arkkelins' grandmother, who indicated that Owens was at 5500 West Maple, which was owned by Harold. When Sterrick arrived at that address, Harold was outside and indicated that Owens was in the shower. However, Owens exited the home soon thereafter. After speaking briefly with Sterrick, she went back inside. Sterrick decided to enter the home based on an odor of marijuana and due to an arrest warrant for Owens.

2

{¶5} Inside the home, Sterrick observed Owens standing in the living room near a table with "crinkled" coffee filters, which were consistent with what he had seen at methamphetamine manufacturing sites. He also noted a jar with residue, marijuana, and a marijuana pipe nearby. Upon further investigation, he found additional items consistent with the manufacture of methamphetamine in the master bedroom, including a funnel, tubing, lithium batteries, and a bottle "with some sludge."

{¶6} Sterrick testified that Owens admitted she and her 15-year old daughter, Miranda Hawes, lived in the home. A prescription pill bottle and an EBT food assistance card, both in Owens' name, were found in the home. Sterrick testified that "it was obvious" Owens lived there. According to Sterrick, Hawes also stated she lived there and a bedroom contained items consistent with that statement, including a backpack, personal items, and "paperwork."

{¶7} Deputy Matthew Johns, a clandestine methamphetamine lab officer with the Ashtabula County Sheriff's Office, was called to 5500 West Maple. When he entered the living room, he saw indications of meth "lab material," including a mason jar and coffee filters, often used to separate "meth oil" out of the final product of methamphetamine. He located other items consistent with the manufacture of meth: butane, lighter fluid, lithium batteries, ammonium nitrate, funnels, tubing, scales, and packaging material. Many of these items were found in one drawer.

{¶8} Two "meth labs" were also located in the bedroom. These consisted of plastic soda bottles, in which the chemicals described above would typically be combined, along with Sudafed or other cold medicine. The two bottles contained liquid or sludge, which Johns recovered for testing. Drug paraphernalia used to ingest

3

methamphetamine was also found in the bedroom. Some of the foregoing items were described as being in "plain view."

{¶9} Johns located the prescription bottle with Owens' name on it in the master bedroom and the food stamp card in a separate "back bedroom." He did not find evidence demonstrating that Owens had purchased the items used to manufacture methamphetamine.

{¶10} Anna Tabor, a forensic scientist at the Ohio Bureau of Criminal Investigation, tested the liquid substance samples collected by Johns. She identified the presence of methamphetamine in the liquid. She also found its presence on coffee filters recovered from the residence.

{¶11} At the close of the State's case, Owens moved for acquittal. The court granted the motion as to Count Two and Count Four and reduced Count Three to a third-degree felony, based on a lack of evidence that the crime occurred in the vicinity of a juvenile.

{¶12} For the defense, Miranda Hawes, Owens' daughter, testified that she and her mother lived at 282 North Avenue, rather than 5500 West Maple, prior to and on May 15, 2016. Owens was working near her home and did not have a driver's license. On May 15, Hawes, her friend, Kyla Hall, Harold Arkkelin, and Owens were cutting down a tree at 282 North Avenue and went to 5500 West Maple to get ratchet straps for transporting the wood. Owens went inside the home to use the restroom and get water. Hawes testified that she did not tell the officers she lived at the West Maple home and that she had never been there before, although she and Owens moved there in June, after this incident occurred.

4

{¶13} Kyla Hall, Hawes' friend, spends time with Hawes daily and testified that Hawes and Owens lived at 282 North Avenue at the time of this incident. According to Hall, Owens was always at the North Avenue home when she came to visit. Hall echoed Hawes' testimony about the events that occurred on May 15.

{¶14} Darcie Johns, Hall's stepmother, lives at 230 North Avenue, and testified that she was Owens and Hawes' neighbor who had been to their home many times. Pamela Juist, who also lives on North Avenue, testified that Hawes came to her house nearly every day to do odd jobs.

{¶15} Matthew Kush, who lived near 5500 West Maple, testified that he had not seen Owens or her daughter there, although he had seen Scott and Harold Arkkelin.

{¶16} Harold Arkkelin, Owens' boyfriend of approximately ten years, was incarcerated for the manufacture of drugs arising out of this incident. He testified that he was the owner of 5500 West Maple, rented it to tenants, and it had been recently vacated as of May 15. He then allowed his brother Scott to stay there temporarily.

{¶17} According to Harold, he and Owens were living at 282 North Avenue on May 15. He gave a similar version of events as provided by Hall and Hawes regarding May 15 and noted that prior to that date, Owens and Hawes had not been to the 5500 West Maple residence. Harold told police that the drugs did not belong to Owens and she had nothing to do with their manufacture. He did not hear Owens tell police that she lived at the residence.

{¶18} Owens testified that she lived at the North Avenue address on May 15 and moved to 5500 West Maple in June. Prior to that time, aside from May 15, she did not have "anything to do with" the residence. On May 15, she went inside to use the

restroom. When police arrived, she did not tell them she lived there. She denied purchasing any of the items relating to the drugs and participating in manufacturing them, and stated that she was unaware of their existence.

**{¶19}** On June 14, 2017, the jury found Owens guilty of the remaining three counts. This was memorialized in a June 19, 2017 Judgment Entry.

**{¶20}** A sentencing hearing was held on August 1, 2017. The court ordered Owens to serve a term of three years in prison for Count One, two years for Count Three, and one year for Count Five, to be served concurrently for a total term of three years in prison. The trial court filed its Judgment Entry of Sentence on August 3, 2017.

**{¶21}** Owens timely appeals and raises the following assignments of error:

**{¶22}** "[1.] Appellant's convictions were based upon insufficient evidence to sustain the convictions. The trial court erred by denying Appellant's Crim.R. 29 motion on all counts granting the motion for only counts two and four.

**{¶23}** "[2.] The Appellant's convictions were against the manifest weight of the evidence."

**{¶24}** We will consider Owens' two assignments of error, relating to the weight and sufficiency of the evidence, jointly.

**{¶25}** In reviewing the sufficiency of the evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

6

{¶26} Whereas "sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, * * * weight of the evidence addresses the evidence's effect of inducing belief." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997). "[A] reviewing court asks whose evidence is more persuasive—the state's or the defendant's?" *Id.* An appellate court must consider all the evidence in the record, the reasonable inferences, the credibility of the witnesses, and whether, "in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." (Citation omitted.) *Thompkins* at 387. "Since there must be sufficient evidence to take a case to the jury, it follows that 'a finding that a conviction is supported by the *weight* of the evidence necessarily must include a finding of sufficiency.'" (Citation omitted.) *State v. Arcaro*, 11th Dist. Ashtabula No. 2012-A-0028, 2013-Ohio-1842, ¶ 32.

{¶27} To convict Owens of Aggravated Possession of Drugs, the State was required to prove, beyond a reasonable doubt, that she did "knowingly obtain, possess, or use a controlled substance or a controlled substance analog." R.C. 2925.11(A).

{¶28} Regarding Illegal Assembly or Possession of Chemicals for the Manufacture of drugs, the State was required to prove that Owens did "knowingly assemble or possess one or more chemicals that may be used to manufacture a controlled substance in schedule I or II with the intent to manufacture" such a substance. R.C. 2925.041(A).

{¶29} Finally, the conviction for Possessing Criminal Tools required the State to

7

prove that Owens did "possess or have under [her] control any substance, device, instrument, or article, with purpose to use it criminally." R.C. 2923.24(A).

{¶30} Initially, Owens does not dispute that items recovered from the home included chemicals and tools used to illegally manufacture a controlled substance, as well as methamphetamine. Thus, the element of the foregoing crimes in dispute is whether Owens was in "possession" of these illegal items. Owens argues that her presence in the home alone was not sufficient to establish possession.

{¶31} Pursuant to R.C. 2925.01(K), possession means "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found."

{¶32} "Possession of drugs can be either actual or constructive." (Citations omitted.) *State v. Adams*, 11th Dist. Ashtabula No. 2012-A-0025, 2013-Ohio-1603, ¶ 35. "Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within his immediate physical possession." *State v. Hankerson,* 70 Ohio St.2d 87, 434 N.E.2d 1362 (1982), syllabus. To prove constructive possession, "[i]t must also be shown that the person was conscious of the presence of the object." *Id.* at 91. "[C]onstructive possession of contraband may be proven solely by circumstantial evidence." *State v. Fogle*, 11th Dist. Portage No. 2008-P-0009, 2009-Ohio-1005, ¶ 30*.*

{¶33} We hold that there was sufficient evidence to sustain the convictions and to prove the element of possession. The evidence, viewed in a light most favorable to the State, showed that Owens admitted both she and her daughter lived inside of the

home where the drugs and drug manufacturing items were located. In addition to officer testimony that her daughter's personal property was in the home, testimony also established that Owens' prescription bottle was located in the master bedroom and her EBT card was in a separate bedroom, indicating Owens had a presence within the home. Further, she was located by police standing in the living room near crumpled coffee filters, an item used in the manufacturing process. Many of the illegal or manufacturing items were stated to be in plain view and were in the master bedroom, where Owens' prescription bottle was located. This supports a conclusion that she was able to exercise control over the items and was "conscious of their presence," as is required to prove constructive possession.

{¶34} Further, the foregoing also applies to the Possessing Criminal Tools conviction, which has the additional element of a "criminal purpose." Pursuant to R.C. 2923.24(B)(3), possession of substances or articles "commonly used for criminal purposes, under circumstances indicating the item is intended for criminal use" is prima facie evidence of criminal purpose.

{¶35} Owens cites two cases for the proposition that there is insufficient evidence, and possession cannot be inferred, when narcotics are found in an area that is jointly occupied and where the appellant does not have exclusive access. *State v. Haynes*, 25 Ohio St.2d 264, 267 N.E.2d 787 (1971); *State v. Pumpelly*, 77 Ohio App.3d 470, 602 N.E.2d 714 (12th Dist.1991). Both are distinguishable from the present case. In *Haynes*, the court explained that "not only were these premises occupied by several persons, but also that the appellant had not occupied them for a week prior to the search." *Id.* at 270. Similarly, in *Pumpelly*, there was "[n]o evidence [that] placed

9

appellant in the apartment at or near the time the cocaine was found." *Id.* at 476. In the present matter, Owens was inside the home, and standing near suspected items used to manufacture methamphetamine, when the illegal items were discovered. It certainly cannot be the case, as Owens seems to imply, that in any instance where multiple people live in a home with drugs, possession cannot be determined or proven unless the drugs are physically on a person's body or otherwise irrefutably shown to belong only to one individual.

**{¶36}** To the extent that Owens also argues that it was necessary to prove that she "aided or abetted" the criminal activity, this relates to complicity. *See* R.C. 2923.03(A)(2) (a person, "acting with the kind of culpability required for the commission of an offense" shall not "aid or abet another in committing the offense"). A defendant may "be convicted of *either* complicity or the principal offense if, acting with the culpability required for the commission of the principal offense, he aids or abets another in committing that offense." (Emphasis added.) *State v. Farr*, 9th Dist. Summit No. 15213, 1992 WL 41284, *2 (Mar. 4, 1992). Here, the jury was instructed as to both the principal offenses and complicity. Since there was sufficient evidence to support the elements of the principal offenses, it is unnecessary to also examine the elements of complicity.

**{¶37}** The remainder of Owens' arguments throughout both of her assignments of error relate to the weight of the evidence.

**{¶38}** Owens emphasizes that several witnesses testified she and her daughter lived on North Avenue on May 15, not on West Maple where the drugs were discovered, which undermines the possession element. Several of these witnesses, however, were

10

friends or family members, raising potential credibility issues. Further, a West Maple neighbor's testimony that he had not seen Owens at the West Maple home, was of questionable value, since he admitted he could not constantly observe the home to be aware of all comings and goings. In contrast to the foregoing, Deputy Sterrick testified that Owens admitted she and her daughter lived at the West Maple home, a conclusion supported by his testimony about their personal property at the home. These issues relate purely to which witnesses the jury chose to believe. The trier of fact is in the best position to assess the credibility of witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.

{¶39} Further, it also would have been reasonable for the jury to conclude, even if Owens did not live solely at the West Maple house, that she spent time there, given the uncontroverted evidence of her prescription bottle and food assistance card, located in different rooms, and that she admitted to moving there less than two months after this incident. The presence of her personal items completely contradicts her statement that she had never been to the home before. The contention that her clothes were not found there is of limited value, given that officers noted their primary focus in the investigation was locating drugs and making the home safe rather than noticing and documenting each and every item of personal property. Again, this conflicting evidence was properly weighed by the jury in reaching its determination of guilt.

{¶40} To the extent that Owens points out that no DNA or fingerprints were taken, as noted above, constructive possession can be supported solely by circumstantial evidence and physical evidence is not required. *Adams*, 2013-Ohio-1603, at ¶ 38. "[C]ircumstantial evidence and direct evidence inherently possess the

11

same probative value." (Citation omitted.) *State v. Biros*, 78 Ohio St.3d 426, 447, 678 N.E.2d 891 (1997).

{¶41} In weighing all of the evidence, the jury was entitled to believe the witnesses presented by the State and to discount Owens' contention that she did not live at the West Maple home or have a connection to the meth labs. Her constructive possession of the illegal items supports her convictions for each of the three offenses. *See State v. Jackson*, 11th Dist. Ashtabula No. 2002-A-0039, 2003-Ohio-5863, ¶ 31-37 (where other adults are living in a home, with access to the area where drugs were discovered, a defendant can be found in constructive possession of drugs when she had access to the room where the drugs were located).

{¶42} The first and second assignments of error are without merit.

{¶43} For the foregoing reasons, Owens' convictions in the Ashtabula County Court of Common Pleas are affirmed. Costs to be taxed against appellant.


TIMOTHY P. CANNON, J., concurs,

THOMAS R. WRIGHT, P.J., concurs in judgment only.