OPINION
Defendant-appellant, Danny Mason, appeals his conviction in the Clinton County Court of Common Pleas for driving while under the influence of alcohol ("DUI") in violation of R.C. 4511.19(A)(1), a felony of the fourth degree.
On October 6, 1998, at about 1:00 a.m., Victor E. Hauck, a patrolman for the village of Blanchester, stopped appellant for an alleged traffic violation. As a result of this stop, appellant was arrested and charged with DUI.
Subsequently, appellant moved the trial court to suppress the evidence obtained from the stop, detention, and arrest. Appellant alleged that the stop and arrest were illegal. Appellant also argued that the BAC DataMaster test he took was not administered in compliance with the Ohio Revised Code and the Ohio Administrative Code. The trial court held two hearings on the motion to suppress, and ultimately overruled the motion.
At the first motion to suppress hearing, Hauck testified that he was at an intersection controlled by a traffic light when he encountered appellant. Hauck testified, "I was sitting at a red light, the light turned green and after the light turned green I saw Mr. Mason in his truck drive passed [sic]. He would have had the red light." After appellant drove through the intersection, Hauck pulled out behind him and activated the overhead lights on his patrol car. Appellant drove for approximately one block and then pulled over and stopped his vehicle.
Hauck testified that upon approaching appellant, he "noticed a strong odor of possible alcoholic beverage about [appellant]." Hauck also testified that appellant's eyes were red and glassy and that "he had a strong slur to his speech." Appellant insisted that the traffic light had been yellow and not red when he entered the intersection, and that the light had changed as he drove through the intersection. However, Hauck issued appellant a traffic citation for failing to stop at a red light.
Appellant was cooperative and stated that he had been drinking. Hauck then asked appellant to perform the horizontal gaze nystagmus ("HGN") test. Hauck detected six out of six possible clues during the HGN test. Hauck further testified that appellant took a hand-held portable BAC test, which appellant failed. Hauck did not ask appellant to perform the walk-and-turn test or the one-leg stand test because appellant has only one leg.
According to Hauck, he placed appellant under arrest and told him that he would have to go to the police station. Appellant was placed in Hauck's police cruiser. Hauck testified that he conducted an inventory search of appellant's vehicle and found an empty beer can between the console and the passenger's seat. The can was open and "cold to the touch." Hauck drove appellant to the police station, where appellant took a BAC DataMaster test that was administered by Officer John Grehl. Hauck testified that the result from this test was .132.
After the first motion to suppress hearing, the trial court filed a judgment entry on February 10, 1999 overruling appellant's motion to suppress and finding that there was probable cause for the stop. In this entry, the trial court also found that Ohio Department of Health ("ODH") rules and regulations had been followed with respect to the BAC DataMaster testing. Specifically, the trial court determined that the BAC DataMaster had been properly calibrated and that appellant had been observed for twenty minutes before taking the test, as required by ODH.
Appellant subsequently filed a motion for rehearing on the motion to suppress, in which he argued that a second hearing was necessary to consider "newly discovered evidence, * * * a videotape made by defendant which calls into serious question the testimony of the arresting officer directly relating to the constitutionality of the original stop." The trial court granted appellant's motion.
At the second motion to suppress hearing, Ted Little, who works for the village of Blanchester maintaining the particular traffic light where the alleged traffic violation occurred, testified as a defense witness. In an attempt to impeach Hauck's testimony, defense counsel questioned Little about the timing of the traffic lights. Appellant also testified, insisting that he had not driven through the intersection while the light was red and that he had been stopped for driving through the intersection while the light was yellow.
In a judgment entry filed on August 3, 1999, the trial court appeared to reconsider the issue of whether there was probable cause for the patrolman's stop of appellant. The trial court wrote, "Officer Hauck was adamant that he observed the Defendant violate the traffic signal. The Defendant was just as adamant that the light was yellow. This presents a question of fact to be determined at trial." The trial court again found that the BAC DataMaster test was administered in accordance with ODH regulations. Specifically, the trial court found that the calibration of the BAC DataMaster had been performed within the one hundred ninety-two-hour period required by ODH regulations.
Appellant immediately filed a "Request for findings of facts and motion for re-consideration on motion to suppress." In this motion, appellant asked the trial court to reconsider its August 3, 1999 entry and make the factual findings necessary to determine whether probable cause for the stop existed. The state opposed this motion.
On August 11, 1999, the trial court issued a clarification of its August 3, 1999 judgment entry. The trial court found that "the Patrolman had probable cause to stop the Defendant for running a red light." Appellant now appeals, and this court construes two assignments of error from appellant's arguments.[1]
 I.
In the first assignment of error, appellant argues that the trial court erred by overruling his motion to suppress. Appellant challenges the legality of the stop, the legality of the arrest, and the validity of the BAC DataMaster test result.
As already noted, in its August 3, 1999 judgment entry, the trial judge stated that the issue of whether appellant failed to stop at a red traffic light was "a question of fact to be determined at trial." When considering a motion to suppress, the trial court is the primary judge of the credibility of witnesses and the weight of the evidence. State v.Fanning (1982), 1 Ohio St.3d 19, 20. The trial court clarified its August 3, 1999 judgment entry by issuing an August 11, 1999 judgment entry, which stated in relevant part that:
 The testimony from Patrolman Houck [sic] is credible that his light was green and that, therefore, the Defendant's light was red when he proceeded through the intersection. The Patrolman had probable cause to stop the Defendant for running a red light.
If the trial court's factual findings in a motion to suppress are supported by competent and credible evidence, then an appellate court must accept them. State v. Williams (1993), 86 Ohio App.3d 37, 41. Relying on the trial court's factual findings, the appellate court determines "without deference to the trial court, whether the court has applied the appropriate legal standard." State v. Anderson (1995),100 Ohio App.3d 688, 691.
 The legality of appellant's traffic stop.
In order for an automobile stop to be constitutional, it must "not be unreasonable under the circumstances." See Whren v. United States
(1996), 517 U.S. 806, 810, 116 S.Ct. 1769, 1772. The Ohio Supreme Court has held that:
 Where a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment to the United States Constitution even if the officer had some ulterior motive for making the stop, such as a suspicion that the violator was engaging in more nefarious criminal activity.
 Dayton v. Erickson (1996), 76 Ohio St.3d 3, syllabus, following UnitedStates v. Ferguson (C.A.6, 1993), 8 F.3d 385. Therefore, as a general matter, an officer's decision to stop an automobile is reasonable whenever the officer has "probable cause to believe that a traffic violation has occurred." Whren, 517 U.S. at 810, 116 S.Ct. at 1772.
In the case sub judice, the patrolman had probable cause to conduct a traffic stop when appellant committed a traffic violation by failing to stop at a red traffic light. Although appellant argued at the second motion to suppress hearing that the traffic light was yellow when he drove through the intersection, the trial court found that the patrolman had probable cause to stop appellant for failing to stop at a red traffic light, and there is evidence on the record to support this finding.
In his brief, appellant argues that a de minimis traffic violation does not justify a stop of a vehicle, citing State v. Johnson (1995),105 Ohio App.3d 37, as well as several unreported cases from this court. However, the cases that held that de minimis traffic violations were insufficient to justify investigatory stops of defendants have been effectively overruled by the Ohio Supreme Court's decisions in State v.Wilhelm (1998), 81 Ohio St.3d 444, and Erickson, 76 Ohio St.3d at 3. SeeState v. Terrell (Oct. 23, 2000), Clinton App. No. CA99-07-020, unreported, at 5. In addition, this court has expressly overruledJohnson and other similar de minimis traffic violation cases to the extent that those cases incorrectly find that an officer must have a reasonable articulable suspicion to initiate a traffic stop even where the driver of the vehicle has committed a traffic violation. State v.Moeller (Oct. 23, 2000), Butler App. No. CA99-07-128, unreported, at 7.
We find that appellant's stop was reasonable because the patrolman had probable cause to believe that appellant had failed to stop at a red light, thereby committing a traffic violation. Therefore, this was a valid investigatory stop, and the evidence arising from this stop should not be suppressed.
B. The legality of appellant's arrest for DUI.
Appellant's motion to suppress also challenges the legality of his arrest for DUI. Specifically, appellant challenges the validity of the result of his HGN test, arguing that the result was untrustworthy because the officer conducted the test while appellant remained seated in his vehicle with his head turned to the side.
In State v. Bresson (1990), 51 Ohio St.3d 123, the Ohio Supreme Court held that the HGN test is a reliable indicator of blood alcohol content ("BAC") levels. Id. at 129. "[T]he only requirement prior to admission [of the HGN test] is the officer's knowledge of the test, his training, and his ability to interpret his observations." Id. In Bresson, the supreme court approved the admissibility of the result of a HGN test performed on a defendant while he was sitting in the front seat of a patrol car with a police officer. See id.
The issue of administration of field sobriety tests was recently revisited by the supreme court. In State v. Homan (2000),89 Ohio St.3d 421, the supreme court held that "[i]n order for the results of a field sobriety test to serve as evidence of probable cause to arrest, the police must have administered the test in strict compliance with standardized testing procedures." Id. at paragraph one of the syllabus. In so holding, the court acknowledged that strict compliance is a necessary standard for the review of field sobriety tests because "it is well established that in field sobriety testing even minor deviations from the standardized procedures can severely bias results."Id. at 426. Moreover, the court noted, "strict compliance with standardized field sobriety testing procedures is neither unrealistic nor humanly impossible in the great majority of vehicle stops in which the police choose to administer the tests." Id. In Homan, the court found that a trooper's failure to use the full four seconds required when checking for the onset of nystagmus was not in strict compliance with the established test procedure and thus made that test unreliable. Id. at 425. The court also found that the walk-and-turn test had not been properly administered. Id.
At the first motion to suppress hearing, Hauck testified that he had nine years of experience as a patrol officer. Hauck successfully completed "ADAP training," which included training for detection of DUI by using the HGN test. In addition, Hauck testified that he had participated in several courses within his department that included HGN training. Hauck testified in detail as to the purpose of the HGN test and the procedure to be followed when administering the test.
During the stop, Hauck instructed appellant to remain in his vehicle and turn his head to the side so that Hauck could perform the HGN test. Hauck admitted that this was not the standard procedure for conducting a HGN test, but that it was a permissible method based upon his training. Hauck testified that he detected six out of six possible clues during the HGN test.
In Homan, the trooper who conducted the field sobriety tests testified that in administering the HGN and walk-and-turn test, he deviated from established testing procedures. Homan, 89 Ohio St.3d at 422. In contrast, Hauck testified he administered the HGN test in a manner that conformed with his training. Hauck testified that the training suggests sitting for a person who cannot be still, and that, in accommodation to appellant's handicap, Hauck did not ask him to stand in order to take the HGN test. Hauck further testified that the way in which appellant turned his head to take the test did not negatively impact the accuracy of the test.
We find that the HGN test was administered in a manner that strictly complied with standardized testing procedures, and therefore it can serve as evidence of probable cause to arrest. See Homan, at paragraph one of the syllabus.
Appellant further argues that there was not probable cause to support his arrest for DUI. In assessing whether there is probable cause to arrest for DUI, a court should consider "whether, at the moment of arrest, the police had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was driving under the influence." Homan, 89 Ohio St.3d at 427, citing Beck v. Ohio (1964),379 U.S. 89, 91, 85 S.Ct. 223, 225; State v. Timpson (1974),38 Ohio St.2d 122, 127. In making this assessment, a court examines the "totality" of the facts and circumstances surrounding the arrest. Homan
at 427.
In addition to the HGN test, appellant took a portable breath test during the investigatory stop. However, the portable test was not considered by the trial court and will not be considered by this court in reviewing the merits of the motion to suppress because such tests are no longer recognized by ODH. See Ohio Adm. Code 3701-53-02 effective July 7, 1997. Reviewing the remainder of the record of the motion to suppress hearing, we must determine whether there was sufficient evidence to establish probable cause that appellant had committed the offense of DUI.
Hauck noted a "strong odor of possible alcoholic beverage about [appellant]." Appellant "had a strong slur to his speech" and his eyes were red and glassy. Appellant admitted that he had been drinking, and he failed the HGN test. There was also evidence that appellant drove his vehicle through a red light. Based on these facts, we find that appellant's arrest for DUI was based upon probable cause.
C. The validity of the BAC DataMaster test result.
Appellant's motion to suppress also challenges the validity of the BAC DataMaster test result. Appellant claims that this test result was unreliable because (1) the BAC DataMaster was not properly calibrated, and (2) appellant was not observed by the senior operator for twenty minutes preceding the test.
Absent a showing of prejudice to a defendant, the results of alcohol tests administered in "substantial compliance" with ODH regulations regarding alcohol testing are admissible in evidence for prosecution of a case under R.C. 4511.19. State v. Plummer (1986), 22 Ohio St.3d 292, syllabus. Breath test results are admissible in R.C. 4511.19(A)(1) cases. See Newark v. Lucas (1988), 40 Ohio St.3d 100. Although in prosecutions under R.C. 4511.19(A)(1) "the test results, if probative, are merely an additional factor to be considered along with all other evidence of impaired driving * * *, the procedures used to obtain the test results are the same as are the requirements for its admissibility." (Citation omitted.) State v. French (1995), 72 Ohio St.3d 446, 451.
With respect to calibration, Deputy James Putz testified about the calibration of the BAC DataMaster at the first motion to suppress hearing. At the time of appellant's arrest, Putz was in charge of checking the calibration of the Blanchester Police Department's BAC DataMaster. Putz testified that he received training for the senior operator position and is certified by the Ohio Board of Health. Putz testified that he calibrated the BAC DataMaster on September 29, 1998, at 10:34 p.m. and on October 7, 1998, at 3:44 a.m. Putz testified that his training indicated that the BAC DataMaster should be calibrated once every seven days or once every one hundred ninety-two hours.
Ohio Adm. Code Section 3701-53-04(A) states that "[a] senior operator shall perform an instrument check on approved evidential breath testing instruments and a radio frequency interference (RFI) check no less frequently than once every seven days in accordance with the appropriate instrument checklist * * *. The instrument check may be performedanytime up to one hundred and ninety-two hours after the last instrumentcheck." (Emphasis added.) Between the BAC DataMaster calibrations on September 29 and October 7, one hundred seventy-three hours and ten minutes passed. Therefore, the BAC DataMaster was calibrated within the mandatory time frame imposed by the Ohio Administrative Code.
Appellant next insists that the senior operator did not observe him for the entire twenty-minute period preceding the breath test and therefore the test result was inadmissible. R.C. 4511.19(D) states that a bodily substance collected for the purpose of determining whether a person is guilty of DUI "shall be analyzed in accordance with methods approved by the director of health * * *." Regulations promulgated by the Director of Health in Ohio Adm. Code 3701-53-02(B) state in relevant part that "[b]reath samples shall be analyzed according to the operational checklist for the instrument being used." The operational checklist for the BAC DataMaster (which was admitted as an exhibit at the motion to suppress) includes the requirement to "[o]bserve subject for twenty minutes prior to testing to prevent oral intake of any material."
In State v. Boyd (Oct. 18, 1993), Brown App. No. CA93-04-002, unreported, this court found that where there was (1) sufficient evidence to show that a defendant was observed for the entire twenty-minute observation period, either by the officer who administered the BAC Verifier test or by the arresting officer, and (2) no evidence that the defendant had ingested anything during the observation period, the defendant's test results were admissible.
The Ohio Supreme Court has held that "[w]hen two or more officers, one of whom is a certified operator of the BAC Verifier, observe a defendant continuously for twenty minutes or more prior to the administration of a breath-alcohol test, the observation requirement of the BAC Verifier operational checklist has been satisfied." Bolivar v. Dick (1996),76 Ohio St.3d 216, syllabus. In Bolivar, the arresting officer continuously observed the defendant for more than one-half hour before arriving at the police station and a second officer, the certified operator of the BAC Verifier, observed the defendant for about sixteen minutes before administering the BAC Verifier test. See id. The supreme court's decision noted that the focus of the mandatory observation period is "`to prevent oral intake of any material' and not to ensure that a certified operator does the observing." Id. at 218, citing State v.Steele (1977), 52 Ohio St.2d 187. The supreme court found that a breath alcohol test administered in substantial compliance with ODH regulations is admissible absent a demonstration of prejudice. Bolivar at 218, following State v. Plummer (1986), 22 Ohio St.3d 292, syllabus.
At the first motion to suppress hearing, an "Additional Consequences" form was admitted into evidence. This document is signed by appellant and indicates that he did not place anything in his mouth or had anything in his mouth for the twenty minutes prior to taking the test. On cross-examination, Officer Grehl admitted that he was not sure whether he observed appellant for twenty minutes prior to administrating the test. However, Grehl testified that Hauck remained with appellant while Grehl was preparing to administer the test. Hauck testified that he had personally observed appellant for at least twenty minutes before the BAC DataMaster test was administered, and that he told Grehl that he had observed appellant for the required period of time. Moreover, there was no evidence that the defendant had ingested anything during the observation period. Therefore, we find that appellant was observed for the required time period in substantial compliance with the methods approved by ODH.
Because we agree with the trial court's findings that appellant's stop and arrest were legal and that the BAC DataMaster test was administered in substantial compliance with ODH regulations, we find that the trial court properly overruled the motion to suppress. The first assignment of error is overruled.
 II.
In the second assignment of error, appellant contends that because there was no expert testimony to explain the meaning of the BAC DataMaster test result to the jury, it was inadmissible at trial.
Before trial, appellant moved the trial court in limine to exclude his BAC DataMaster test result. The trial court overruled appellant's motion. During opening statements, the prosecution told the jury that appellant's BAC DataMaster test result was .132. Defense counsel objected to this statement. During trial, Hauck, who was not qualified as an expert, testified that appellant's BAC DataMaster test result was .132. At that point, defense counsel moved the trial court for a mistrial, arguing that the breath test result must be accompanied by expert testimony in order to be admitted into evidence in a case under R.C.4511.19(A)(1). This motion was overruled. In addition, a BAC DataMaster test printout was admitted into evidence despite appellant's objections. At no time during the trial did the prosecution provide expert testimony to explain the significance of the test result.
The Ohio Supreme Court has stated:
 This court has previously held that when introducing the results of a legally obtained breathalyzer test into evidence in prosecutions under R.C. 4511.19(A)(1), the state must present expert testimony "to relate the numerical figure representing a percentage of alcohol by weight in the bodily substance, as shown by the results of the chemical test, to the common understanding of what it is to be under the influence of alcohol." Newark v. Lucas * * * 40 Ohio st.3d at 105, 532 N.E.2d at 134, citing State v. Myers (1971), 26 Ohio St.2d 190, 198, 55 O.O.2d 447, 452, 271 N.E.2d 235, 251.
 * * * [I]n a charge under R.C. 4511.19(A)(1), the chemical test result is not dispositive of guilt, but merely constitutes some evidence to consider, if probative, in addition to all other evidence regarding the conduct of the defendant. Clearly, without expert testimony, prejudice could result from a jury giving too much weight to the test result itself rather than focusing on the critical issue of the defendant's conduct. (Emphasis added.)
 French, 72 Ohio St.2d at 452. See, also, State v. Phillips (1993),97 Ohio App.3d 1 (defendant's DUI conviction under R.C. 4511.19(A)(1) reversed where his breath test result of .116 was admitted into evidence without an explanation of the meaning of the result).
In the case sub judice, the jury was uncertain as to the significance of appellant's test result. During their deliberations, the jury sent the trial judge the following question: "What is the legal limit for DUI?" This gives credence to the warning in French,72 Ohio St.2d at 452, that "without expert testimony, prejudice could result from a jury giving too much weight to the test result itself rather than focusing on the critical issue of the defendant's conduct." The jury was subsequently instructed that it could not on the basis of the test alone conclude or infer that appellant was or was not under the influence of alcohol.
We find that without expert testimony, the BAC DataMaster test result was meaningless and inadmissible. See Phillips, 97 Ohio App.3d at 4. Therefore, this test result should not have been given any weight in the jury's deliberation. The trial court erred by admitting the test result without expert testimony.
Having determined that it was error to admit this evidence, we must now assess whether this error was harmless or prejudicial. See State v.Pumpelly (1991), 77 Ohio App.3d 470, 475. In making this assessment, this court must review the entire record, disregarding the objectionable material, and decide whether there was otherwise overwhelming evidence of appellant's guilt. Id., citing Harrington v. California (1969),395 U.S. 250, 89 S.Ct. 1726. This court has previously held that if the record does not demonstrate overwhelming evidence of appellant's guilt aside from the objectionable material, then the trial court's judgment must be reversed. Pumpelly at 475.
Reviewing the entire record, we note appellant was charged with DUI under R.C. 4511.19(A)(1), the so-called impairment section, which states: "No person shall operate any vehicle * * * within this state, if * * * [t]he person is under the influence of alcohol * * *." The evidence adduced to support appellant's conviction under the impairment statute includes the fact appellant ran the red light; the strong odor of alcoholic beverage about his person; his admission that he consumed "five or six" beers earlier and some beer ten minutes before the arrest; the cold, empty beer can found in his vehicle next to him; his red and glassy eyes; his slurred speech; and the HGN test results.
The trial court erred by admitting the breath test result without expert testimony regarding its meaning and significance to the jury. From reviewing the entire record, we find, however, that there is overwhelming evidence that appellant was guilty of DUI; therefore, appellant's conviction is affirmed. The second assignment of error is overruled.
 ________________________ WALSH, J.
YOUNG, P.J., concurs.
VALEN, J., dissents.
[1] Appellant's brief actually contains one assignment of error, which is separated into three "branches." To facilitate our review of appellant's arguments, we will construe these three "branches" as two separate assignments of error: the first asserting error in the overruling of the motion to suppress and the second alleging error in an evidentiary decision made by the trial judge during trial.