[Cite as *State v. Morris*, 2023-Ohio-168.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                          Court of Appeals No.  L-22-1025

      Appellee                                    Trial Court No.  CR0201902771

v.

Lawrence Morris, Jr.                           **DECISION AND JUDGMENT**

      Appellant                                   Decided:  January 20, 2023

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Brenda J. Majdalani, Assistant Prosecuting Attorney, for appellee.

Dennis C. Belli, for appellant.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} Appellant, Lawrence Morris, Jr., appeals the judgment of the Lucas County

Court of Common Pleas, following a jury trial, convicting him of one count of possession

of cocaine.  For the reasons that follow, we affirm.

## I. Facts and Procedural Background

{¶ 2} On October 9, 2019, the Lucas County Grand Jury returned a four-count indictment against appellant, charging him with one count of trafficking in cocaine, one count of possession of cocaine, one count of receiving stolen property, and one count of misdemeanor endangering children.  The charges arose following the July 12, 2019 execution of a search warrant that uncovered two bags of cocaine inside the residence located at 2110 Airport Highway, Toledo, Ohio.

{¶ 3} Following an initial plea of not guilty, appellant moved to suppress the evidence seized from the residence.  Appellant argued that the affidavit supporting the search warrant failed to establish probable cause to believe that evidence would be found at the residence.

{¶ 4} Toledo Police Detective Ryan Klump submitted the affidavit, in which he detailed appellant's history of drug encounters, including a traffic stop that Klump participated in on October 23, 2018.  During that stop, the vehicle appellant was driving was discovered to have approximately 44 grams of cocaine.  The affidavit further detailed information from three confidential sources who observed appellant make hand to hand transactions, and meet with people for short amounts of time, which Klump stated was consistent with drug trafficking.  Klump stated in the affidavit that the sources have assisted him in criminal investigations for between one and four years, have provided information that has led to the seizure of contraband, have provided information that has

2.

been verified as credible and accurate, and have assisted him in the arrest and conviction of numerous narcotics traffickers. Notably, Klump used substantially identical language to describe the credibility of each source.

{¶ 5} The sources identified appellant and his silver Dodge Ram truck, and provided information that appellant resided at 2110 Airport Highway. The observations from the confidential sources occurred between January and July 2019. Some of the specific observations included source three informing Klump on June 11, 2019, that appellant was observed trafficking cocaine; source one informing Klump on June 20, 2019, that appellant had just received 10 pounds of marijuana; and source three informing Klump on July 5, 2019, that appellant had just sold two "zips" (ounces) of cocaine from 2110 Airport Highway. Klump also stated in his affidavit that during this time, surveillance was conducted on 2110 Airport Highway, and appellant was observed frequently entering and exiting the property, using his key to lock and unlock the property, and parking his silver Dodge Ram truck in the garage.

{¶ 6} Following a hearing on the motion to suppress, the trial court denied appellant's motion, finding that there was "more than a substantial basis for a conclusion of probable cause."

{¶ 7} Thereafter, the matter proceeded to a three-day jury trial at which the state called five witnesses. The first witness was Toledo Police Detective Robert Tyburski. Tyburski assisted with the execution of the search warrant on July 12, 2019. Tyburski

3.

testified that no one was home when they entered. Tyburski first searched the kitchen and discovered a revolver in a kitchen cabinet. Tyburski next searched the living room and found a bankcard and an expired Ohio driver's license belonging to appellant.

{¶ 8} The next witness to testify was appellant's probation officer, Dave Schultz. Schultz authenticated records from the probation department in which appellant reported his residence as 2110 Airport Highway on monthly forms from May 2019 through February 2020.

{¶ 9} The third witness to testify was Chadwyck Douglas, who works at the Toledo Police Crime Lab. Douglas testified as an expert witness in the field of drug analysis. Douglas testified that he tested two substances. One he identified as marijuana, weighing 11.91 grams. The other substance he identified as cocaine hydrochloride weighing 37.14 grams.

{¶ 10} The fourth witness was Kaitlyn Porter, who works at the Toledo Police Forensic Lab. Porter testified that she test-fired the revolver, as well as a rifle recovered from the scene, and both weapons were found to be operable.

{¶ 11} The last witness to testify for the state was Detective Klump. Klump testified that he conducted surveillance on 2110 Airport Highway over 20 times as part of a narcotics and drug trafficking investigation. Klump often observed appellant arrive at the location, park his silver Dodge Ram truck in the garage, walk to the front door, and unlock the front door with a key. In addition to appellant, Klump observed 10 to 20 other

4.

people coming and going from the residence, ranging in age from toddlers to pre-teens to adults. Klump testified that the high amount of traffic is common for houses that are used for drug trafficking.

{¶ 12} Klump also participated in a "trash pull" from the residence, and discovered mail addressed to appellant at 2110 Airport Highway. Klump also discovered a "ripped baggy," which he testified was associated with drug trafficking.

{¶ 13} Klump then testified to the execution of the search warrant. Klump testified that appellant was named in the warrant based upon Klump's observation of him, as well as the fact that Klump "received a lot of information that he was using 2110 to traffic narcotics, and all my information was corroborated with my surveillance of the location and Lawrence Morris throughout the City of Toledo."

{¶ 14} When entry was made into the residence, no one was inside. Klump testified that two large baggies of cocaine were found in the dining room, along with a bowl containing cocaine residue, two scales, and some spoons for mixing drugs. Specifically, the items were found in the center drawer of a built-in cabinet located under a window. Klump identified the baggies of cocaine as the same cocaine that was tested by Douglas. In the living room, in addition to appellant's bank card and expired driver's license, the detectives found approximately $7,000 and a digital video recording system used for surveillance. The $7,000 was found in a drawer below an armrest of the sectional sofa, and was located next to a piece of mail addressed to L. Thomas, LLC, at

5.

2110 Airport Highway. Klump testified that through his investigation he learned that L. Thomas, LLC, was owned by appellant. Upstairs, the detectives found a loaded AK-47 rifle leaning against the wall of a bedroom. Lastly, Klump testified that a prescription bottle belonging to appellant was found at the residence. The prescription bottle listed appellant's address as being on Avondale Ave. in Toledo, Ohio, and allowed for one refill until November 26, 2018.

{¶ 15} As the last part of his direct testimony, Klump testified regarding the contents of the digital video recording system that was seized. The recording showed appellant coming and going from the house on multiple occasions and at varying times between May 26 and June 2, 2019. On a few occasions, appellant was carrying a package, and on at least one occasion, appellant appeared to be carrying a firearm. In addition to appellant's coming and going, the recording showed several other adults, and some children, entering and exiting the house.

{¶ 16} On cross-examination, Klump was asked about a shooting that occurred at 2110 Airport Highway on May 21, 2019, which Klump alluded to in his direct testimony. The police report from that shooting listed appellant as a victim, but also listed Marcus Matlock as a second victim and a resident of 2110 Airport Highway.

{¶ 17} Klump also testified on cross-examination that the digital video recording showed another individual, not appellant, coming and going from the residence and using a key to enter the house. In addition, the video showed at least one other individual

6.

entering the house with some sort of bag. Klump also admitted that he did not photograph or take other documents or pieces of mail, which he admitted were present in the residence and belonged to someone else. Further, Klump agreed that the last time appellant was observed at 2110 Airport Highway was June 21, 2019, but the search warrant was not executed until July 12, 2019.

{¶ 18} On the subject of confidential informants, Klump confirmed that he used confidential informants as part of his investigation, but testified that none of the confidential informants ever participated in a controlled buy or purchased cocaine from appellant, and none of them purchased cocaine from 2110 Airport Highway. Klump also agreed that the search warrant affidavit does not state that any of the confidential informants had ever been inside 2110 Airport Highway or witnessed appellant conducting a drug transaction inside 2110 Airport Highway.

{¶ 19} On redirect examination, Klump was asked about his use of confidential informants in the following exchange:

> Q.     And in relation to this case did you use one confidential informant or multiple?
>
> A.     Multiple.
>
> Q.     And in general, do you recall what if any information they provided you?

7.

A. They provided me with observing Lawrence Morris making drug deals and giving me information about when he received drugs or cocaine from other drug dealers.

Q. Now, the information that you received from these confidential informants, did you talk to them individually or together?

A. Individually.

Q. Did their information that one informant provide you match or consistent with the information that another informant provided you?

A. Yes.

Q. And then that information that they provided you was that consistent with the investigation that you conducted?

A. Yes.

Q. And that would be both surveillance that you conducted as well as surveillance by other officers?

A. Yes.

Q. And the trash pull that was conducted on May 17th, 2019?

A. Yes.

Q. You also indicated that you had reviewed previous histories or previous contacts, correct?

A. Yes.

Q.     Was the information that the confidential informants provided you consistent with prior contact, police contact with Mr. Morris?

A.     Yes.

* * *

Q.     Now, [defense counsel] also asked you if there was any information that a confidential informant had been inside of 2110 Airport Highway included in your warrant, correct?

A.     Correct.

Q.     Phil, I'm going to hand you Defendant's Exhibit B which again is a copy of your search warrant. Detective, do you recall if prior to executing the warrant on June -- I apologize, July 12th of 2020 -- 2019, did you receive any information about what the contents inside of that home would have been approximately around July 5th of 2019?

A.     July 5th I received information from a CI about Lawrence Morris receiving two zips or two ounces of cocaine.

Q.     And was it receiving or does it say sold two zips?

A.     I'm sorry, sold two zips or two ounces of cocaine out of 2110 Airport Highway.

At no time did appellant object to the above testimony.

{¶ 20} On re-cross examination, Klump clarified that his search warrant affidavit did not say that the confidential informant actually witnessed appellant selling two zips of cocaine out of 2110 Airport Highway.

{¶ 21} Following its presentation of evidence, the state of Ohio rested. Appellant moved for an acquittal pursuant to Crim.R. 29. The trial court granted appellant's motion as it pertained to the counts of receiving stolen property and endangering children. The trial court denied appellant's motion as to the counts of trafficking in drugs and possession of drugs, and the trial continued on those two counts.

{¶ 22} Appellant then called one witness in his defense. Marcus Matlock testified that he is appellant's brother, and that he lived with appellant at 2110 Airport Highway in the spring and summer of 2019. Matlock testified that his cousin also lived with them during that time. Matlock moved out of the house in July 2019, before the search warrant was executed. Matlock testified that while he lived at 2110 Airport Highway, he received mail there. Matlock also testified that he had an old Ohio driver's license listing his address as 2110 Airport Highway. Matlock testified that after he moved out, there were still other individuals other than appellant that lived at the residence and that had keys for the residence.

{¶ 23} Matlock testified that on May 21, 2019, two separate drive-by shootings occurred at the residence. After the shootings, Matlock continued to reside at the

residence with appellant and their cousin, but they would not stay for long periods of time because they did not know who had shot at them.

{¶ 24} Matlock lived at 2110 Airport Highway for approximately one year. While he lived there, it was not uncommon for appellant to be gone for a few days or even for a week at a time. Matlock testified that appellant would stay with a female friend. Matlock testified that it was also not uncommon for other individuals to stay the night or for a few days at the house.

{¶ 25} Matlock testified that other than marijuana, he never observed drugs inside of the residence, never observed anyone drop off any quantity of drugs, and never observed appellant sell any type of drugs.

{¶ 26} On cross-examination, Matlock testified that appellant owned the home at 2110 Airport Highway, and maintained that as his legal residence, although he lived there "off and on." Matlock testified that as of the trial, appellant continued to live at 2110 Airport Highway.

{¶ 27} Following Matlock's testimony the defense rested. Appellant again moved for an acquittal pursuant to Crim.R. 29 on the remaining counts, which the trial court denied. The trial court then instructed the jury and the parties presented their closing arguments. Relevant here, the state, in closing, referenced and relied upon "those confidential informants [that] told [Klump] that Lawrence Morris was involved in drug trafficking throughout the City of Toledo, both in a silver Dodge Ram as well as from the

11.

residence of 2110 Airport Highway," and that the information provided was consistent amongst the confidential informants and was consistent with the results of his investigation.

{¶ 28} Thereafter, the jury returned with a verdict of not guilty as to the count of trafficking in drugs, and a verdict of guilty as to the count of possession of drugs in violation of R.C. 2925.11(A) and (C)(4)(E), a felony of the first degree. At sentencing, the trial court ordered appellant to serve an indefinite prison sentence of four to six years.

## II. Assignments of Error

{¶ 29} Appellant has timely appealed his judgment of conviction, and now asserts five assignments of error for our review:

1. The trial court erred when it denied defendant-appellant's motion for a judgment of acquittal as to the count of possession of cocaine at the close of the state's case.

2. Defendant-appellant's conviction for possession of cocaine is not supported by sufficient evidence to satisfy the requirements of the due process clause of the Fourteenth Amendment to the United States Constitution.

3. The trial court erred in denying defendant-appellant's motion to suppress cocaine that was seized by law enforcement officers pursuant to a

search warrant that was issued and executed in violation of his rights under the Fourth and Fourteenth Amendments to the United States Constitution.

4. The prosecutor violated the Rules of Evidence and deprived defendant-appellant of his rights under the due process and confrontation clauses of the Sixth and Fourteenth Amendments to the United States Constitution by eliciting testimonial statements of absent informants and urging the jury to consider the content of the statements as substantive proof of guilt.

5. Defendant-appellant was denied his right to the effective assistance of counsel, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, due to the combined prejudicial impact of multiple instances of deficient performance.

### III. Analysis

{¶ 30} For ease of discussion, we will address appellant's assignments of error out of order, beginning with his third assignment of error.

### A. Motion to Suppress

{¶ 31} In his third assignment of error, appellant argues that the trial court erred when it denied his motion to suppress the evidence seized pursuant to the search warrant.

{¶ 32} Appellate review of a trial court's denial of a motion to suppress presents mixed questions of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-

5372, 797 N.E.2d 71, ¶ 8. "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.* "Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id.* "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*

{¶ 33} The Fourth Amendment to the United States Constitution, and Article I, Section 14 of the Ohio Constitution, prohibit unreasonable searches and seizures, and provide that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." In this case, appellant argues that the search warrant affidavit was insufficient to establish probable cause.

> In determining the sufficiency of probable cause in an affidavit submitted
> in support of a search warrant, "[t]he task of the issuing magistrate is
> simply to make a practical, common-sense decision whether, given all the
> circumstances set forth in the affidavit before him, including the 'veracity'
> and 'basis of knowledge' of persons supplying hearsay information, there is
> a fair probability that contraband or evidence of a crime will be found in a
> particular place."

*State v. George*, 45 Ohio St.3d 325, 544 N.E.2d 640 (1989), paragraph one of the syllabus, quoting *Illinois v. Gates*, 462 U.S. 213, 238-239, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

> In reviewing the sufficiency of probable cause in an affidavit submitted in
> support of a search warrant issued by a magistrate, neither a trial court nor
> an appellate court should substitute its judgment for that of the magistrate
> by conducting a *de novo* determination as to whether the affidavit contains
> sufficient probable cause upon which that court would issue the search
> warrant.  Rather, the duty of a reviewing court is simply to ensure that the
> magistrate had a substantial basis for concluding that probable cause
> existed.  In conducting any after-the-fact scrutiny of an affidavit submitted
> in support of a search warrant, trial and appellate courts should accord great
> deference to the magistrate's determination of probable cause, and doubtful
> or marginal cases in this area should be resolved in favor of upholding the
> warrant.

*Id.* at paragraph two of the syllabus, following *Illinois v. Gates*.

{¶ 34} Appellant first argues that the search warrant affidavit focuses on allegations that appellant is a drug dealer, but does not provide information establishing that evidence of a crime would be found at 2110 Airport Highway.  Appellant relies on the principle that "[t]he critical element in a reasonable search is not that the owner of the

15.

property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." *Zurcher v. Stanford Daily*, 436 U.S. 547, 556, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978). However, the affidavit does contain information that establishes a fair probability that evidence of a crime would be found at 2110 Airport Highway. Specifically, in addition to information implicating appellant as a drug dealer who resides at 2110 Airport Highway, the affidavit stated that detectives found torn baggies, which are consistent with drug trafficking, in garbage recovered from that address. Further, the affidavit stated that appellant was observed coming and going from the residence numerous times throughout the day, which the affiant explained was consistent with drug trafficking. Finally, the affiant received information from source three that appellant had just sold two ounces of cocaine out of 2110 Airport Highway. From this information, we hold that the magistrate had a substantial basis for concluding that probable cause existed.

{¶ 35} Appellant next challenges the magistrate's reliance on some of the information in the affidavit, specifically the information from source three that appellant had just sold two ounces of cocaine out of the residence. Citing *State v. Williams*, 173 Ohio App.3d 119, 2007-Ohio-4472, 877 N.E.2d 717 (6th Dist.), appellant argues that the affidavit did not adequately set forth the basis for determining that source three was reliable. In *Williams*, this court recognized that "Ohio courts have found probable cause to issue a search warrant under a variety of circumstances, but only when they have found

16.

the presence of some indicia of veracity of the informant or the reliability of the information material to the probability of evidence of crime." *Id.* at ¶ 18. In that case, this court found insufficient the affiant's statement that his investigation confirmed drug activity, and that the sources have been proven reliable. *Id.* at ¶ 17. This court reasoned,

> The affidavit contained no statements providing indicia of either the veracity of the informants or the basis of their knowledge. We have no idea how the officer confirmed the drug activity or why the sources have been proven reliable. "Filtering the hearsay statement of an informant through a law enforcement agency establishes neither the truth of the statement nor the reliability of the informant." *State v. Dalpiaz*, 151 Ohio App.3d 257, 270, 2002-Ohio-7346, 783 N.E.2d 976, ¶ 43 [(11th Dist.)]. The officer's conclusions, not the required indicia of veracity or reliability, were presented to the magistrate.

*Id.*

{¶ 36} Notably, the *Williams* court distinguished several cases where the affiant's statement was sufficient. For example, in *State v. Nicholson*, 6th Dist. Erie No. E-99-083, 2001 WL 575050, *2 (May 25, 2001), the affiant attested that "the informant had proven to be 'extremely reliable' over the past two years and had provided information that led to the successful execution of fifteen to twenty search warrants." In that case, the affiant also provided additional information supporting the veracity of the informant.

17.

Likewise, in *State v. Dukes*, 6th Dist. Sandusky No. S-00-031, 2001 WL 227057, *1 (Mar. 9, 2001), the affidavit stated that the "informant ha[d] supplied [Detective] Swartz with information that * * * resulted in the execution of several search warrants that led to numerous arrests and eventual convictions * * * [and] supplied [Detective] Swartz with other non drug related information in the past that proved to be true and accurate."

{¶ 37} Here, similar to *Nicholson* and *Dukes*, the affidavit establishes source three's reliability by stating,

Source three has assisted this affiant in criminal investigations for over a year. Source three has provided information that has lead (sic) to seizure of narcotics, firearms, materials consistent with drug trafficking, and U.S. currency derived from illegal drug sales. Source three has provided information that has proven to be independently verified as creditable and accurate by other confidential sources, other law enforcement officers, and law enforcement and open source databases. Source three has assisted this affiant in the arrest and conviction of numerous narcotics traffickers. Source three fears for her/his safety and must remain silent and anonymous for safety reasons.

{¶ 38} Appellant, however, contends that this statement in the affidavit should be given little weight because it is boilerplate language that the affiant similarly uses for source one and source two. While appellant is correct that the affiant uses the same

18.

language for all three sources, that fact does not make the affiant's statements untrue. Alternatively, appellant contends that source three's statement should be discounted because it does not reveal the basis for the informant's knowledge. But, a reasonable inference from source three's statement is that source three was present at the transaction because source three knew appellant "*just sold* 2 'zips' or ounces of cocaine out of 2110 Airport Hwy." (Emphasis added). *See State v. Long*, 2020-Ohio-4090, 157 N.E.3d 362, ¶ 31 (6th Dist.) ("[P]robable cause for a search warrant can be based on reasonable inferences drawn from information in the affidavit."). Thus, we conclude that the affidavit contains indicia of the veracity of source three and the reliability of the information.

{¶ 39} In sum, taking a common sense approach, and affording deference to the issuing magistrate, we hold that the affidavit contains a sufficient basis to conclude that probable cause existed to believe that evidence of drug trafficking would be found at 2110 Airport Highway. Therefore, we hold that the trial court did not err in denying appellant's motion to suppress the evidence seized pursuant to the search warrant.

{¶ 40} Accordingly, appellant's third assignment of error is not well-taken.

## B. Sufficiency of the Evidence

{¶ 41} In his first assignment of error, appellant argues that the trial court erred in denying his Crim.R. 29 motion for an acquittal following the state's presentation of evidence. In his second assignment of error, appellant argues that his conviction was

based upon insufficient evidence. Both assignments of error present the same standard of review. *See State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37 ("A motion for acquittal under Crim.R. 29(A) is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence."). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. For our purposes, appellant's first and second assignments of error differ only in that his first assignment of error considers just the evidence produced by the state, whereas his second assignment of error considers the state's evidence as well as the evidence produced by the defense.

{¶ 42} Appellant was found guilty of possession of cocaine in violation of R.C. 2925.11(A), which provides that "No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog." Specifically, appellant was convicted of possessing cocaine in an amount exceeding twenty-seven grams, but less than one hundred grams, which is a felony of the first degree. R.C. 2925.11(C)(4)(e).

{¶ 43} Appellant argues that the state failed to produce evidence showing that he knowingly possessed the cocaine. "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the

20.

person is aware that such circumstances probably exist." R.C. 2901.22(B). "'Possess' or 'possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K).

{¶ 44} Possession may be actual or constructive. "Actual possession occurs when the defendant has the items within his immediate physical control, whereas constructive possession occurs when the defendant is able to exercise dominion and control over an item, even if the individual does not have the item within his immediate physical possession." *State v. Shelby*, 2019-Ohio-1564, 135 N.E.3d 508, ¶ 24 (6th Dist.), citing *State v. Fykes*, 6th Dist. Wood No. WD-07-072, 2009-Ohio-2926, ¶ 36. Since the drugs were found in appellant's home while he was not present, this case involves a question of constructive possession. "In order for constructive possession to exist, there must be evidence demonstrating that the defendant was conscious of the presence of the object." *Id.* "A court must look at all of the attendant facts and circumstances in order to determine if a defendant knowingly possessed a controlled substance." *Id.*

{¶ 45} Beginning with appellant's first assignment of error, appellant contends that the state failed to produce any evidence of possession other than appellant's mere access to the cocaine through his ownership and occupation of the residence at 2110 Airport Highway. In so arguing, appellant relies on several cases.

{¶ 46} In *State v. Haynes*, 25 Ohio St.2d 264, 267 N.E.2d 787 (1971), the Ohio Supreme Court reversed a conviction for possession of marijuana that was found in an area ordinarily accessible to all tenants. The court reasoned that the evidence was insufficient to establish possession where the only evidence produced at trial was that the defendant was the lessee of the house, and the uncontroverted evidence showed that the house was occupied by several persons and the defendant had not occupied the house for a week prior to the search. *Id.* at 270-271. Notably, the Ohio Supreme Court recognized that the trial did not contain any of the evidence alleged in the search warrant that a named informant purchased marijuana from the defendant at the house. *Id.* at 270.

{¶ 47} In *State v. Swalley*, 11th Dist. Ashtabula No. 2010-A-0008, 2011-Ohio-2092, the Eleventh District reversed a conviction for possession of chemicals for the manufacture of drugs. In that case, various items used in the manufacturing of methamphetamine were found in a laundry basket located behind a couch in the living room. Additional items were found in the garage, and in a garbage can located on the front porch of the four-unit apartment. The defendant, Swalley, had just moved into the apartment only a day or two before the search was executed, and was sleeping on the couch. The apartment was leased by a different individual, who often offered a place to stay to his friends, like Swalley. Just before Swalley moved in, a third individual had moved out. On appeal, the Eleventh District, in a 2-to-1 decision, held that the record did not contain sufficient evidence as to the elements of possession of chemicals for the

22.

manufacture of drugs. The court reasoned that Swalley did not have exclusive control over or access to where the items were found. *Id.* at ¶ 73.

{¶ 48} Appellant also relies on *State v. Pumpelly*, 77 Ohio App.3d 470, 602 N.E.2d 714 (12th Dist.1991). In that case, Pumpelly challenged the admission of hearsay testimony from her brother, in which her brother stated that Pumpelly lived in the apartment, was a cocaine addict, and was absent from the apartment at the time of the search because she was suffering from a cocaine overdose. *Id.* at 475. In determining that the admission of the hearsay testimony constituted plain error, the Twelfth District found that the only other evidence of Pumpelly's possession of the small amount of cocaine and drug paraphernalia in the apartment were rent receipts in Pumpelly's name in the room in which the cocaine was discovered; no evidence placed Pumpelly in the apartment at or near the time the cocaine was found. *Id.* at 476.

{¶ 49} Each of these cases are distinguishable. In this case, appellant listed 2110 Airport Highway as his residence on his probation forms. In addition, on numerous occasions appellant was observed parking his car in the garage, and using a key to enter and exit the home. Appellant's bank card and expired driver's license were found in the home, as well as legal documents and mail addressed to him at that address. Thus, the evidence is sufficient to establish that appellant resided at 2110 Airport Highway. Notably, unlike *Haynes* and *Pumpelly*, there was not uncontroverted evidence that appellant had not been present at the residence for some amount of time before the search

23.

was conducted. While Klump testified that he did not observe appellant entering or exiting the home for the three weeks before the search warrant was executed, Klump did not testify that he was conducting surveillance on the home during that time. To the contrary, the pattern of behavior observed by Klump while he was surveilling the home, and appellant's behavior as recorded by the home security system, show that appellant was frequently present. The present situation is also distinguishable from *Swalley*, in that appellant was not a new occupant of the home, but rather he was a long-time resident.

{¶ 50} Further, the quantity of the drugs, the presence of scales, bowls, and spoons, the torn baggies in the garbage, and the fact that the house contained easily accessible loaded guns and large amounts of cash distinguish the present situation from cases involving mere ownership or occupation of the premises. Although others were observed frequently entering and exiting the residence, which Klump testified was indicative of drug trafficking, it belies all common sense to conclude that appellant was blissfully unaware that there was a loaded handgun in the kitchen cabinet, a loaded AK-47 leaning against the wall in a bedroom, or $7,000 in cash hidden in the couch next to his mail. Given these facts and circumstances, it is also not believable that appellant would be unaware of $7,000 worth of drugs and drug trafficking paraphernalia hidden in a cabinet in his dining room.

{¶ 51} This conclusion is even more evident when considering the information from the confidential informants that appellant was involved in drug trafficking and had

24.

recently sold cocaine from the residence, which again distinguishes this case from *Haynes*. Appellant, however, argues that the information from the confidential informants should not be considered in the sufficiency analysis because it is inadmissible hearsay. Appellant's argument is incorrect. "When evaluating an assignment of error challenging the sufficiency of the evidence, a reviewing court must consider all evidence admitted at trial, including the improperly admitted evidence that was the source of the reversal for trial error." *State v. Gideon*, 165 Ohio St.3d 156, 2020-Ohio-6961, 176 N.E.3d 720, ¶ 29, citing *State v. Brewer*, 121 Ohio St.3d 202, 2009-Ohio-593, 903 N.E.2d 284, ¶ 24-26.

{¶ 52} Therefore, we hold that, when viewed in a light most favorable to the prosecution, appellant's established occupancy and frequent use of 2110 Airport Highway, the discovery of torn baggies in the garbage, the accessibility of loaded guns, the $7,000 in cash hidden in the couch next to his mail, the presence of appellant's bank card, expired driver's license, and mail, and appellant's involvement in drug trafficking, was sufficient for a rational juror to have found that appellant knowingly possessed the drugs beyond a reasonable doubt.

{¶ 53} Accordingly, appellant's first assignment of error is not well-taken.

{¶ 54} Appellant's second assignment of error seeks a different result based upon the addition of the testimony of appellant's brother, Matlock. Matlock sought to establish that appellant shared the residence with others, and thus did not have exclusive

25.

possession of the premises, thereby muddying the question of who owned the cocaine. When viewed in a light most favorable to the state, Matlock's additional testimony does not alter any of the conclusions reached in appellant's first assignment of error. Indeed, Matlock's testimony that appellant continued to reside at the residence following the shooting and through the time of trial actually bolsters the conclusion that appellant occupied and used the residence, and thus made it more likely that he knowingly possessed the cocaine.

{¶ 55} Accordingly, appellant's second assignment of error is not well-taken.

### C. Hearsay, Confrontation Clause, and Prosecutorial Misconduct

{¶ 56} In his fourth assignment of error, appellant first argues that Klump's testimony regarding the information from confidential informants constituted hearsay and violated appellant's right to confront the witness against him.

{¶ 57} "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted in the statement." Evid.R. 801(C). Here, there are two instances of potential hearsay. The first is Klump's testimony on direct examination that appellant's name was listed in the search warrant because Klump "received a lot of information that [appellant] was using 2110 to traffic narcotics, and all my information was corroborated with my surveillance of the location and Lawrence Morris throughout the City of Toledo." The second is Klump's testimony on redirect that the informants "provided me with observing

Lawrence Morris making drug deals and giving me information about when he received drugs or cocaine from other drug dealers," and told him about appellant selling two ounces of cocaine out of 2110 Airport Highway.

{¶ 58} Of the two instances, the second one is far more problematic. As to the first instance, a reasonable argument could be made that it was not offered to prove the truth of the matter asserted—i.e., that appellant was using 2110 Airport Highway to traffic narcotics—but instead it was offered to demonstrate why Klump included appellant's name on the search warrant application.

> Out-of-court statements to explain police conduct during the investigation of a crime are not hearsay and are admissible if they satisfy three criteria: (1) the conduct the officer is trying to explain is "relevant, equivocal, and contemporaneous with the statements"; (2) the probative value of the statements is not substantially outweighed by the danger of unfair prejudice; and (3) "the statements cannot connect the accused with the crime charged."

*State v. Kamer*, 6th Dist. Wood No. WD-20-084, 2022-Ohio-2070, ¶ 176, quoting *State v. Ricks*, 136 Ohio St.3d 356, 2013-Ohio-3712, 995 N.E.2d 1181, ¶ 27. While we think this is a close case in that it is not particularly relevant for the jury to know why appellant's name was on the search warrant, and the statements do connect the accused with the

crime charged, for purposes of our analysis we will assume that Klump's statement constituted inadmissible hearsay.

{¶ 59} The second instance is not nearly as close. On redirect, Klump testified that informants told him that appellant dealt drugs and received drugs from other drug dealers. We know that this testimony was offered to prove the truth of the matter asserted because the next line of questioning explored why the informants were reliable: Klump talked to the informants individually; the information was consistent between informants; the information was consistent with Klump's surveillance and the results of the trash pull; the information was consistent with Klump's previous contacts with appellant. After establishing the informants' credibility, the prosecutor then elicited Klump's testimony that one of the informants told him that appellant just sold two ounces of cocaine out of 2110 Airport Highway. This is a textbook example of hearsay. Furthermore, it runs afoul of the Sixth Amendment to the United States Constitution, which provides that "In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." The right to confrontation is violated "when an out-of-court statement that is testimonial in nature is admitted into evidence without the defendants having had the opportunity to cross-examine the declarant." *State v. Ali*, 2d Dist. Clark No. 2014 CA 59, 2015-Ohio-1472, ¶ 14, citing *Crawford v. Washington*, 541 U.S. 36, 68, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

28.

{¶ 60} However, appellant did not object to this testimony at trial. Thus, he has waived all but plain error. *State v. Obermiller*, 147 Ohio St.3d 175, 2016-Ohio-1594, 63 N.E.3d 93, ¶ 72 ("We are limited to plain-error review as a result of Obermiller's failure to object when the alleged hearsay was introduced."); *State v. Tench*, 156 Ohio St.3d 85, 2018-Ohio-5205, 123 N.E.3d 955, ¶ 217 (because defendant did not object at trial, "[h]e cannot, therefore, prevail on [the Confrontation Clause] issue unless he establishes plain error.").

{¶ 61} Crim.R. 52(B) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Plain error requires (1) "an error, *i.e.*, a deviation from a legal rule," (2) that is "plain" or "an 'obvious' defect in the trial proceedings," and (3) that "must have affected 'substantial rights.'" *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002). For an error to have affected substantial rights, the error "must have affected the outcome of the trial." *Id.* "The accused is therefore required to demonstrate a reasonable *probability* that the error resulted in prejudice—the same deferential standard for reviewing ineffective assistance of counsel claims." (Emphasis sic.) *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 22. "But even if an accused shows that the trial court committed plain error affecting the outcome of the proceeding, an appellate court is not required to correct it." *Id.* at ¶ 23. "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a

29.

manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 97, 372 N.E.2d 804 (1978). Here, the record does not support a finding of plain error.

{¶ 62} Excluding the offending hearsay testimony, we find that the remaining evidence is of sufficient quality that a reasonable probability does not exist that appellant would have been acquitted. As described above, the evidence demonstrated that appellant resided at 2110 Airport Highway both before and after the execution of the search warrant. Appellant, and others, were observed frequently entering and exiting the property at all times of day and night, which Klump testified was indicative of drug trafficking. Appellant exercised particular dominion over the property by parking in the garage and utilizing a key to lock and unlock the home. In addition, appellant's bank card and expired driver's license, a prescription bottle with appellant's name, and mail and legal documents addressed to appellant were found in the house.

{¶ 63} The house also contained a loaded AK-47 leaned against the wall in an upstairs bedroom, a loaded handgun sitting in a kitchen cupboard, and $7,000 in cash in a drawer in the couch next to appellant's mail. Common sense dictates that appellant was aware of the presence of these items, which together are often associated with the drug trade. Further, the presence of these items in the home convinces us that appellant was also aware of the scales, bowl, mixing spoons, and 37 grams of cocaine hidden in a cabinet in the dining room. We find the quantity of drugs to be particularly relevant. We could believe that appellant would be unaware of a personal-use amount of drugs that one

of the occupants or guests may have had, but we cannot believe that appellant would be unaware of approximately $7,000 worth of cocaine in his home.

{¶ 64} Given appellant's occupation of the home, the use of the home in a pattern that is indicative of drug trafficking, the presence of a number of appellant's personal items in the home, and the fact that the home contained unhidden or poorly-hidden guns, money, and drugs, we are confident that appellant was able to exercise dominion and control over the cocaine. Thus, we find it manifestly improbable that appellant did not knowingly possess the cocaine, and we hold, therefore, that appellant's substantial rights were not affected when the trial court allowed the offending testimony from the confidential informants through Klump. Consequently, appellant has not demonstrated plain error.

{¶ 65} Alternatively, appellant argues in this assignment of error that the prosecutor committed prosecutorial misconduct when she referred to the hearsay testimony during closing arguments. "The test regarding prosecutorial misconduct in closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant." *State v. Smith*, 14 Ohio St.3d 13, 14, 470 N.E.2d 883 (1984). "It is a prosecutor's duty in closing arguments to avoid efforts to obtain a conviction by going beyond the evidence which is before the jury." *Id.* But, in this case, appellant did not object to the hearsay testimony of which he now complains, and that evidence was before the jury. Therefore, it is not improper rising to

31.

the level of prosecutorial misconduct for the prosecutor to rely on that evidence in her closing argument.

{¶ 66} Accordingly, because appellant has not demonstrated plain error or prosecutorial misconduct, his fourth assignment of error is not well-taken.

### D. Ineffective Assistance of Counsel

{¶ 67} Finally, in his fifth assignment of error, appellant argues that he received the ineffective assistance of trial counsel. To prove a claim of ineffective assistance, appellant must demonstrate that counsel's performance fell below an objective standard of reasonableness, and a reasonable probability exists that, but for counsel's error, the result of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice * * * that course should be followed." *Id.* at 697.

{¶ 68} In support, appellant identifies five instances in which he argues his trial counsel was ineffective: (1) trial counsel failed to object to the testimonial and hearsay statements of absent informants, and to the prosecutor's closing arguments; (2) trial counsel cross-examined Klump on the search warrant affidavit; (3) trial counsel did not object to Klump's testimony that appellant owned the company listed on the piece of mail located next to the $7,000 in cash; (4) trial counsel failed to object to the calling of

32.

appellant's probation officer as a witness; and (5) trial counsel failed to object when the trial judge disclosed that she had an ex parte communication with the jury.

{¶ 69} The first four instances cited by appellant all concern trial counsel's actions as they pertain to the introduction of evidence, thus we will address them together. Because we conclude that appellant has not demonstrated sufficient prejudice, we will focus on that prong. In determining whether appellant has demonstrated prejudice, we utilize the same test that we used in our plain error review: appellant must demonstrate a reasonable probability that but for counsel's error the result of the proceedings would have been different. *Id.* at 694; *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 22.

{¶ 70} Appellant's first instance of ineffective assistance challenges trial counsel's failure to object to the out-of-court statements of the confidential informants. Appellant's second instance of ineffective assistance challenges trial counsel's strategy of questioning Klump about the search warrant, which led to the out-of-court statements of the confidential informants. In our plain error analysis above, we considered the prejudice resulting from these statements, and have concluded that there is not a reasonable probability that the result of the proceedings would have been different if the hearsay testimony from the informants had been excluded.

{¶ 71} Appellant's third and fourth instances raise additional evidentiary issues regarding the piece of mail that was found next to the $7,000 in cash, and the suggestion

that appellant was a criminal because his probation officer testified. These additional instances do not impact our conclusion of no prejudice. Specifically, the piece of mail next to the $7,000 in cash strongly ties the money to appellant, but that relationship is thoroughly established by appellant's occupancy and dominion over the residence, and the presence of his bank card, expired driver's license, and other mail in various places throughout the home. As to the suggestion that appellant was a criminal, we note that no evidence was elicited regarding why appellant was on probation, thereby lessening the prejudice. Furthermore, in our plain error analysis above, we did not mention or rely on appellant's character as a criminal.

{¶ 72} Therefore, we hold that appellant has not demonstrated a reasonable probability that the results of the proceeding would have been different but for trial counsel's errors pertaining to the introduction of evidence.

{¶ 73} In his fifth instance of ineffective assistance, appellant challenges trial counsel's failure to object to the trial court's ex parte communication with the jury. Following the reading of the verdict, the trial court informed the parties that it had responded to a question from the jury regarding the verdict form. The jurors had informed the court that they wrote the word "guilty" in the place that they should have written either "did" or "did not." The error resulted in the form stating, "We the Jury, further find that the amount of cocaine possessed by the Defendant, Lawrence Morris Jr. *GUILTY* equal or exceeded twenty-seven grams, but did not exceed one hundred grams

34.

of cocaine." The court responded to the jurors that it re-printed the jury form, and that they should put an "X" through the incorrect form and return it with the others.

{¶ 74} Regardless of whether the trial court should have had the parties present when it responded to the jury, there was no prejudice to appellant. At the time of the communication, the jury had already reached its decision that appellant "did" possess cocaine exceeding 27 grams, and their question only pertained to an error in recording that verdict. Thus, appellant cannot demonstrate that the result of the proceedings would have been different had he been present for the trial court's communication with the jury.

{¶ 75} Accordingly, we hold that appellant's claims of ineffective assistance must fail, and his fifth assignment of error is not well-taken.

### IV. Conclusion

{¶ 76} For the foregoing reasons, we find that substantial justice has been done the party complaining, and the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.          _____
                                              JUDGE

Thomas J. Osowik, J.

                                  _____
Gene A. Zmuda, J.                              JUDGE
CONCUR.

                                  _____
                                              JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.